**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roy WHITEHEAD, Defendant-Appellant.**

**No. 18607.**

United States Court of Appeals,
Sixth Circuit.

March 3, 1970.

McCree and Combs, Circuit Judges, and O'Sullivan, Senior Circuit Judge, dissented in part.

Joel M. Shere, Detroit, Mich., on brief for defendant-appellant.

Ralph B. Guy, Jr., Chief Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee; James H. Brickley, U. S. Atty., Detroit, Mich., on the brief.

Before PHILLIPS, Chief Judge, WEICK, EDWARDS, CELEBREZZE, PECK, McCREE, COMBS and BROOKS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

EDWARDS, Circuit Judge.

This appeal presents constitutional issues upon which panels of this court have been divided. It was selected by the court *sua sponte* for en banc consideration. It was reargued before the entire bench in the December 1969 term of the court. The fundamental question presented is whether the Fifth Amendment bars appellant's conviction on an indictment charging violations of the federal alcohol tax laws. We hold that it does not.

Appellant was convicted on seven counts of an eight-count indictment and sentenced to concurrent terms totaling four years. The counts charged appellant with possession, custody and control of a still, the making of mash, the transportation of raw materials to an unlawful distillery, and the possession of distilled spirits, all in violation of the federal tax laws.[1]

The record discloses extensive surveillance of the house in Detroit, Michigan, where ultimately the still and 800 gallons of mash were found. Appellant was

1. 26 U.S.C. §§ 5173(a), 5601(a) (4), 5205 (a) (2), 5179(a), 5601(a) (1), 5222(a) (1), 5601(a) (7), 5178(a) (1) (B), 5601 (a) (6), 5180(a), 5681(c) (1964).

seen going into the house carrying 60-pound sacks of sugar and coming out with paper bags containing something heavy and loading same in cars. Two such cars were stopped by Internal Revenue agents. Appellant, who was driving one of them, was arrested. Both cars were found to be loaded with non-tax-paid whiskey. Thereupon a search warrant was procured for the house, the still was found, and appellant was indicted.

Appellant contends that the evidence was insufficient to sustain conviction on several counts, including Count 6 pertaining to the making of mash. He also contends that various provisions of the federal tax laws violated his Fifth Amendment rights under Supreme Court decisions in the *Marchetti,*[2] *Grosso,*[3] and *Haynes*[4] cases.

We believe that the evidence of appellant's activity in and about the premises were acts which represented much more than presence at the site of a still (*see* United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965)) or assistance in only one phase of an illegal liquor business (*see* Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947)). Appellant was seen engaged in activities from which the jury could have inferred that he was carrying supplies for illegal manufacture of liquor into a house and carrying the illegal liquor out. He was arrested while driving an automobile which contained illicit whiskey which the jury had every right to infer was a product of an illegal still operated by appellant.

As to the count which alleged illegal manufacture of mash, appellant was seen carrying heavy bags of sugar into the house where subsequently the still and some distilled liquor were found. The sugar bags were found empty in a closet in the house. Eight hundred gallons of mash were also found there.

All in all, there was both direct and circumstantial evidence from which the jury could have inferred appellant's guilt on all counts beyond a reasonable doubt. Ramsey v. United States, 248 F.2d 740 (6th Cir. 1957); Chadwell v. United States, 260 F.2d 257 (6th Cir. 1958).

■ Turning to the constitutional issue, we note that appellant herein did not seek to raise the Fifth Amendment privilege at trial. Nonetheless, we do not consider the privilege to have been waived in this case and we elect to decide this issue on its merits. *See* Grosso v. United States, 390 U.S. 62, 63, 70, 71, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Drennon v. United States, 393 F.2d 342 (8th Cir. 1968); Greenwood v. United States, 392 F.2d 558 (4th Cir. 1968); United States v. Manfredonia, 391 F.2d 229 (2d Cir. 1968); Harris v. United States, 390 F.2d 616 (8th Cir. 1968); *but see* Howard v. United States, 397 F.2d 72 (9th Cir. 1968).

We are urged to hold these tax measures unconstitutional in that they require the performance of certain affirmative acts; here, the posting of a sign at the site of a lawful distillery, the furnishing of bond, the purchase and affixing of tax stamps and the filing of registration information. Appellant asserts that these affirmative acts might create for some prospective taxpayers in some possible situations "hazards of incrimination * * * [which] are not trifling or imaginary." Marchetti v. United States, 390 U.S. 39, 54, 88 S.Ct. 697, 706, 19 L.Ed.2d 889 (1968).

■ At the outset we emphasize that we do not read these words as having been written as a litmus paper test of constitutionality. It is "compelled" self-incrimination against which the Fifth Amendment has been held to offer protection. Every criminal act, no matter how voluntary, creates some real

---

2. Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

3. Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

4. Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).

hazard of incrimination. And where regulatory legislation provides penalties for failure to perform certain acts normally the Fifth Amendment does not apply because the omission is not deemed "compelled."

■ We do not think that the Supreme Court has as yet provided a wholly clear rationale for distinguishing constitutional exercise of taxing and regulatory powers from those situations wherein fatal Fifth Amendment conflicts are to be found. In such a situation we would proceed with some caution and with strict construction of the case holdings if the issue involved appeared to be in doubt. In our instant case, however, we believe there is no reason for doubt.

There are clear and important distinctions between the currently disputed provisions of alcohol tax statutes and those statutory provisions which were held vulnerable to attack on Fifth Amendment grounds in the *Marchetti*, *Grosso* and *Haynes* cases. *See also* Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

Underlying the series of cases to which we have referred is the Supreme Court's holding in Albertson v. SACB, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965). The Supreme Court there distinguished between the *Sullivan* case (United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927)) which upheld as constitutional the requirement of filing an income tax return, and an order requiring a Communist to register as such and thus furnish evidence of his violation of two federal criminal statutes.

In *Albertson* the Supreme Court said:

"In *Sullivan* the questions in the income tax return were neutral on their face and directed at the public at large, but here they are directed at a highly selective group inherently suspect of criminal activities. Petitioners' claims are not asserted in an essentially noncriminal and regulatory area of inquiry, but against an inquiry in an area permeated with criminal statutes, where response to any of the form's questions in context might involve the petitioners in the admission of a crucial element of a crime." Albertson v. SACB, 382 U.S. *supra* at 79, 86 S.Ct. at 199.

## THE PUBLIC PURPOSE

The alcohol tax laws are "essentially noncriminal" revenue measures. Until the Sixteenth Amendment to the United States Constitution (income tax), taxes on alcoholic beverages provided the fundamental financing of the United States government.

Even after enactment of the federal income tax, the alcohol tax laws constitute substantial revenue producing measures.

As the Fourth Circuit has noted:

"In 1966, the taxes on distilled spirits produced $3.7 billion in internal revenue. The wagering tax scrutinized in *Marchetti* produced 'in the past several years' only $115 million. 390 U.S. at 82, 88 S.Ct. at 721.

"We think the failure of these defendants to designate place of manufacture and to post a distillery bond is due to their wish to avoid the federal tax of $10.50 per gallon on distilled spirits. The evasion of tax alone provides the enormous margin of profit in the white whiskey business and accounts for the delinquency here. It lies well within the power of Congress to exercise a regulatory function to enforce the collection of such lawfully due taxes." United States v. Walden, 411 F.2d 1109, 1112 (4th Cir. 1969). (Footnote omitted.)

In a preprohibition case, the United States Supreme Court provided this description of the alcohol tax laws of that day—a description which we feel entirely appropriate to describe the statute currently under attack:

"It is clear, even upon a cursory reading, that the well-considered and minute provisions of the Revised Statutes found in chapter 4, entitled 'Dis-

tilled Spirits,' of Title XXXV., entitled 'Internal Revenue,' were adopted with one purpose only, namely, to secure the payment of the tax imposed by law upon distilled spirits.

"All the regulations for the manufacture and storage the marking, branding, numbering, and stamping with tax stamps, of distilled spirits, and all the penalties, forfeitures, fines, and imprisonments prescribed by the chapter mentioned, have that end only in view. If the tax on distilled spirits were repealed, all the ingenious and complicated provisions of the chapter would become useless and insensible." United States v. Ulrici, 111 U.S. 38, 40, 4 S.Ct. 288, 289, 28 L.Ed. 344 (1884).

■ Returning to the language of *Albertson*, the statutory provisions here attacked are "neutral on their face and directed at the public at large." The manufacture of alcoholic beverages is lawful under some circumstances in all 50 states and the District of Columbia and the taxes are collected from thousands of persons engaged in lawful sale and distribution of these products.

The Fifth Circuit has expressed this view in a case upon which the Supreme Court has already denied certiorari:

"Perhaps if this prosecution had occurred under an appropriate statute that existed during the short life of the Eighteenth Amendment to the United States Constitution, appellants could properly equate their situation to the appellants in Marchetti. As it is, however, we are informed by the government's brief, and it is not disputed, (a matter of which we can take judicial notice) that possession of distilled spirits is legal to some extent in every one of the fifty states of the union. Therefore, we find ourselves in agreement with those district courts in addition to the trial court here, which have held that there is no danger of self incrimination resulting from the requirement of Sections 5205(a) (2) and 5604(a) (1) relating to the placing of stamps and taxing of

distilled spirits." Brown v. United States, 401 F.2d 769, 770 (5th Cir. 1968), cert. denied, 394 U.S. 962, 89 S.Ct. 1314, 22 L.Ed.2d 564 (1969).

THE EFFECT ON THE INDIVIDUAL

■ Regardless, however, of what we have written thus far pertaining to the purpose of the alcohol tax laws, appellant would argue that the Fifth Amendment privilege depends upon no such balancing of rights and is absolute as to him. We cannot perceive, however, how the affirmative acts here objected to can be held to represent compelling this appellant "in any criminal case to be a witness against himself." U.S.Const. Amend. V. Contrary to the facts in the *Albertson* case, these statutory provisions are not aimed at exposing "a highly selective group inherently suspect of criminal activities" to prosecution under other criminal statutes. Nor do we find here a compelled response which might involve "the admission of a crucial element of a crime."

These statutes do apply generally to all who manufacture liquor, including many persons or organizations who do so entirely lawfully within the State of Michigan. We find here no purpose to aid state officialdom in suppressing activities generally rendered illegal by state law. *Cf.* Marchetti v. United States, *supra*; Grosso v. United States, *supra*.

We certainly do not find here that "Congress intended information obtained as a consequence of [the requirements of these statutes] to be provided to interested prosecuting authorities." Marchetti v. United States, *supra*, 390 U. S. at 58, 59, 88 S.Ct. at 708.

■ Nor do we find that these statutes have "an obvious purpose * * * to coerce evidence from persons engaged in illegal activities for use in their prosecution." Grosso v. United States, *supra* 390 U.S. at 74, 88 S.Ct. at 717 (concurring opinion).

Indeed, the alcohol tax statutes were drafted with the purpose of keeping per-

sons of ill-repute out of the alcohol beverage manufacturing business. Seaway Beverages, Inc. v. Dillon, 115 U.S.App. D.C. 321, 319 F.2d 722, cert. denied, 375 U.S. 923, 84 S.Ct. 265, 11 L.Ed.2d 166 (1963). And these federal statutes—in place of seeking to expose a limited class of law violators to state prosecution (*Cf. Marchetti, Grosso* and *Haynes*)— prohibit issuance of a basic permit upon a finding "that the operations proposed to be conducted by such person are in violation of the law of the State in which they are to be conducted." 27 U.S.C. § 204(a) (2) (C) (1964).

Absent the prior securing of the basic permit on a showing of compliance with state law, it is greatly to be doubted that any other of the affirmative acts required as a prerequisite to legal manufacture of alcoholic beverages under federal law (*i.e.,* posting of bond, securing and posting of a distillery sign, securing and affixing of tax stamps) could actually be performed.

For example, Title 27 § 203 makes it unlawful to manufacture, ship or sell any distilled spirits, except pursuant to the basic permit referred to above. And appellant in this case (if we hypothesize his ability to show compliance with state law) could not have received such a basic permit to manufacture distilled spirits on the premises involved in this case because 26 U.S.C. § 5178 flatly prohibits such a plant "in any dwelling house."

The possibility of appellant's self-incrimination by dint of actual compliance with the statutory provisions attacked herein is considerably less than "purely hypothetical." *Cf.* Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L. Ed.2d 283 (1969).

In summary, the statutory provisions attacked in this appeal are a far cry from the statutory provisions invalidated in *Marchetti, Grosso* and *Haynes* which the Supreme Court held deliberately sought to expose federal registrants to state prosecution. Here federal registration is prohibited unless the registrant is in compliance with state law. This appellant could not, if he had tried, have gotten his name on any list of federal registrants because that list was a list of lawful distillers under both state and federal laws and not as in *Marchetti* and *Grosso* a list of gamblers whose activities were illegal under state law. Judge McCree's dissent suggests that appellant might have "attempted" registration and in effect told the federal authorities of his intention to make white whiskey in residential premises. Since there would have been no conceivable federal statutory benefit from such a disclosure, we cannot perceive how it could be deemed "compelled" in any Fifth Amendment sense.

We find no abuse of appellant's Fifth Amendment rights.

While this is a case of first impression in this court, we are by no means plowing new ground in the federal law. Three circuits and many District Courts have already reached the same conclusion. United States v. Fricano, 416 F. 2d 434 (2d Cir. 1969); United States v. Walden, 411 F.2d 1109 (4th Cir. 1969); Wilson v. United States, 409 F.2d 604 (5th Cir.), cert. denied, 395 U.S. 923, 89 S.Ct. 1772, 23 L.Ed.2d 240 (1969); Thornburg v. United States, 406 F.2d 1060 (5th Cir. 1969); Grant v. United States, 407 F.2d 56 (5th Cir. 1969); Hall v. United States, 407 F.2d 1320 (5th Cir. 1969); United States v. Ellington, 406 F.2d 348 (5th Cir. 1969); Shoffeitt v. United States, 403 F.2d 991 (5th Cir. 1968), cert. denied, 393 U.S. 1084, 89 S.Ct. 868, 21 L.Ed.2d 777 (1969); Anderson v. United States, 403 F.2d 206 (5th Cir. 1968); Brown v. United States, 401 F.2d 769 (5th Cir. 1968), cert. denied, 394 U.S. 962, 89 S. Ct. 1314, 22 L.Ed.2d 564 (1969); United States v. Young, 284 F.Supp. 1008 (E. D. Tenn. 1968); United States v. Richardson, 284 F.Supp. 419 (M.D. Ala. 1968); United States v. McGee, 282 F. Supp. 550 (M.D. Tenn. 1968). *Contra,* United States v. Fine, 293 F.Supp. 189 (E.D. Tenn. 1968).

The judgment of the District Court is affirmed.

452

McCREE, Circuit Judge (dissenting in part).

I would affirm appellant's conviction on count 6 for making and fermenting mash on premises not lawfully qualified for the production of distilled spirits in violation of 26 U.S.C. §§ 5222(a) (1) and 5601(a) (7) and on count 7 for aiding and assisting in the use of a still for the production of distilled spirits in a dwelling house in violation of 26 U.S.C. §§ 5178(a) (1) (B) and 5601(a) (6). Appellant's only objection to his convictions on these counts is directed to the sufficiency of the evidence to uphold these convictions, and I agree that the evidence is sufficient to uphold them. I would, however, reverse appellant's convictions on count 1 for carrying on the business of a distiller without giving bond in violation of 26 U.S.C. §§ 5173(a) and 5601(a) (4); on counts 3 and 4 for possessing and transporting distilled spirits in containers not having affixed thereto the required revenue stamps in violation of 26 U.S.C. §§ 5205(a) (2) and 5604(a) (1); on count 5 for possessing an unregistered still in violation of 26 U.S.C. §§ 5179(a) and 5601(a) (1); and on count 8 for carrying and delivering raw materials to an unlawful distillery at which no sign was posted in violation of 26 U.S.C. §§ 5180(a) and 5681(c). I would reach this result because appellant's refusal to comply with the statutory requirements upon which these convictions are based was a proper exercise of his fifth amendment privilege against self-incrimination and therefore he may not be criminally punished for his failure to comply. *See* Marchetti v. United States, 390 U.S. 39, 61, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

The fifth amendment provides, in pertinent part, that "No person * * * shall be compelled in any criminal case to be a witness against himself * * *." In a series of recent decisions involving the relationship between this privilege and the Government's right to require a person, upon threat of criminal prosecution, to provide potentially incriminating information, the Supreme Court has decided that "The *central standard* for the privilege's application [is] whether the claimant is confronted by substantial and 'real,' not merely trifling or imaginary, hazards of incrimination." Marchetti v. United States, *supra* at 53, 88 S.Ct. at 705 (emphasis added). *Accord,* Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L. Ed.2d 923 (1968); Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L. Ed.2d 57 (1969). If the obligation to provide information creates " 'real and appreciable,' and not merely 'imaginary and unsubstantial,' hazards of self-incrimination," a person cannot be criminally punished for refusing to comply. Marchetti v. United States, *supra* at 48, 88 S.Ct. at 702.

At the outset, it should be observed that this standard renders inapposite one of the factors relied on by the majority to distinguish *Marchetti, Grosso, Haynes* and *Leary* from the present case. The majority points out that the alcohol tax laws are "essentially non-criminal revenue measures" and that the purpose of the disclosure provisions is to facilitate securing the payment of the taxes imposed and not to aid law enforcement officials in their efforts against illegal manufacturers of distilled spirits. However, regardless of the Congressional purpose for inclusion of the disclosure provisions in the alcohol tax laws, the refusal to comply with these provisions cannot be criminally punished if compliance would create substantial and real hazards of self-incrimination. *See generally* Counselman v. Hitchcock, 142 U.S. 547, 585, 12 S.Ct. 195, 35 L.Ed. 1110 (1892).[1] The question

1. It is interesting to speculate on the effect on the privilege against self-incrimination of a doctrine which would permit infringement of the privilege if occasioned by a legitimate Congressional purpose, since the suppression of criminal activity, in certain areas, would be a legitimate Congressional purpose.

before us, then, is whether appellant "* * * may be compelled to give evidence against himself." Marchetti v. United States, *supra* 390 U.S. at 51, 88 S.Ct. at 704.

Considering the substantiality of the risk of self-incrimination if appellant complied with the disclosure provisions of the alcohol tax laws, the majority concludes that the degree of risk involved is "considerably less than 'purely hypothetical'" (1) because the disclosure provisions are "directed at the public at large" and not "at a highly selective group inherently suspect of criminal activities", Albertson v. SACB, 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 65 (1965), and (2) because it is doubtful, in any event, whether appellant would ever have the opportunity to perform the affirmative acts of disclosure.

Admittedly, compliance with a statutory provision requiring the disclosure of illegal activity creates a greater risk of self-incrimination when the disclosure requirement is directed at a "group inherently suspect of criminal activities," since it identifies the discloser as a member of the suspect group. Leary v. United States, *supra,* 395 U.S. at 18, 89 S.Ct. at 1539. *See also* Marchetti v. United States, *supra* 390 U.S. at 57, 88 S. Ct. 697; Grosso v. United States, *supra,* 390 U.S. at 68, 88 S.Ct. 709. However, the character of the group subject to a disclosure requirement certainly is not by itself determinative of the substantiality of the risk of self-incrimination attendant on compliance with such a requirement. Even if the requirement is not directed at an inherently suspect group, the risk encountered as a consequence of compliance may still be "real and appreciable".

Indeed, manufacturers of distilled spirits are a prime example of this. Although distillers may not be a "group inherently suspect of criminal activities," they are involved in a business which is subject to extensive state and federal controls. In Michigan, the liquor industry is an area permeated with statutory requirements, the violation of which can be criminally punished. *See, e. g.,* Mich.Comp.Laws §§ 436.1, 436.2, 436.17, 436.19, 436.22, 436.32, 436.50. Moreover, at the time appellant was engaged in the illegal manufacture of distilled spirits, there was a statutory requirement that certain internal revenue offices maintain a list of persons who had paid the special taxes assessed on the manufacture of distilled spirits and that this list be furnished to any prosecuting officer of any state, county, or municipality upon request. 26 U.S.C. § 6107.[2] There is therefore sufficient attention focused on manufacturers of distilled spirits to indicate that the hazards of self-incrimination attendant on compliance with the disclosure provisions of the alcohol tax laws would be more than "merely trifling or imaginary."

The important inquiry then is whether, in reality, these hazards ever would materialize. *Cf.* Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); Minor v. United States (Buie v. United States), 396 U.S. 87, 96 S.Ct. 284, 24 L.Ed.2d 283 (1969). The majority concludes that this is "greatly to be doubted" because a prerequisite to compliance with the disclosure provisions of the alcohol tax laws is the securing of a basic permit, 27 U.S.C. § 203(b) (1), and the Secretary of the Treasury is prohibited from issuing a

2. This provision was repealed, effective December 16, 1968, by Section 203(a), Title II of the Gun Control Act of 1968, Pub.L.No. 90–618, 1968 U.S.Code Cong. & Adm.News, p. 1423, but this does not affect the relevance of section 6107 to the substantiality of the risk of self-incrimination confronting appellant at the time of his illegal activity. *See* Albertson v. SACB, 382 U.S. 70, 77, 86 S.Ct. 194, 15 L.Ed.2d 65 (1965). Furthermore, al-

though the Internal Revenue Service is no longer required to compile a list of persons who pay the special alcohol taxes and to furnish this list to prosecuting officials, "neither has Congress imposed explicit restrictions upon the use of information obtained as a consequence of payment of the tax." Grosso v. United States, 390 U.S. at 66, 88 S.Ct. at 712. *See* Marchetti v. United States, 390 U.S. at 60, n. 18, 88 S.Ct. 697.

basic permit when "the operations proposed to be conducted * * * are in violation of the law of the State in which they are to be conducted." 27 U. S.C. § 204(a) (2) (C).

The effect on the privilege against self-incrimination of practical barriers to actual compliance with provisions requiring disclosure of illegal activity depends on the nature of the barriers. In Leary v. United States, *supra,* the Government contended that there was no substantial risk of self-incrimination because one who intended unlawfully to purchase marihuana would know he could not obtain the order form which contained the incriminating questions and consequently never would apply for it. The Government also contended that even if the buyer did apply for an order form, it was doubtful that the unsuccessful application would be revealed to law enforcement officials. *Id.,* 395 U.S. at 18–20, 89 S.Ct. 1532. The Supreme Court rejected both of these contentions and concluded that "real and appreciable" hazards of self-incrimination did confront Leary because the Congressional intent, as revealed by the statutory scheme adopted, was that an unlawful purchaser of marihuana should be able to obtain an order form.

On the other hand, in Buie v. United States, *supra,* the Court decided that the practical barriers encountered by one who unlawfully sold marihuana were sufficiently insurmountable to preclude any real possibility that he actually would comply with the order form requirements and thereby incriminate himself. Indeed, it was the Court's earlier decision in *Leary* that reduced the hazards of self-incrimination to the point where they were "imaginary and unsubstantial" as far as the seller was concerned because its decision relieved the purchaser of marihuana of his obligation of obtaining the order form and of providing the seller with an opportunity to comply with its requirements and thereby incriminate himself. Buie v. United States, *supra,* 396 U.S. at 91–93, 90 S.Ct. 284.

The practical barriers to compliance confronted by appellant in the instant case are not as artificial as those in *Leary,* but neither are they as substantial as those in *Buie.* Although a basic permit is a prerequisite to the lawful manufacture of distilled spirits, the absence of such a permit might not preclude appellant from complying with the provision requiring him to post a sign at the site of the still. 26 U.S.C. § 5180(a). Under the terms of the statute and the regulation adopted pursuant thereto, appellant apparently could have complied with this requirement merely by fabricating a sign containing the required information and installing it. *See* 26 C.F.R. § 201.235. Since "a sign placed conspicuously on the outside front or entrance [of the still] and exhibiting in readily legible and durable characters (a) the real name of the proprietor, (b) the plant number, and (c) the designation of the kind of business", 26 C.F.R. § 201.235, would disclose the operation of the still, I think the hazards of incrimination attendant on compliance with 26 U.S.C. § 5180(a) are "real and appreciable". Accordingly, I would hold that appellant cannot be criminally punished for his failure to comply with this statutory provision.

The necessity of a basic permit and the prohibition on its issuance if the proposed operation violates the laws of the state probably would foreclose "literal and full compliance" with the statutory provisions requiring appellant to register the still and to file a qualification bond. 26 U.S.C. §§ 5179(a), 5173 (a). However, the basic permit requirement would not prevent appellant from *attempting* to comply with the registration and qualification bond provisions by submitting an application. There is no statutory requirement that a distiller obtain a basic permit prior to filing an application for registration and a qualification bond.[3] Also, pursuant to 26 U.S.

3. The qualification bond is filed at the same time as the application for registration. 26 U.S.C. § 5173(a).

C. § 5171(a), "Every person *shall, before commencing* or continuing the business of a distiller * * * make application" for the registration of his still. (Emphasis added). Accordingly, under the statutory scheme adopted by Congress, a distiller can file the registration form and qualification bond simultaneously with his request for a basic permit. Moreover, the likelihood that a distiller would do this is increased by the fact that he can lawfully obtain distilling apparatus prior to securing a basic permit.

Similarly, appellant also would not be precluded from *attempting* to procure the revenue stamps which must be affixed to containers of distilled spirits. 26 U.S.C. § 5205(a) (2). Again, the likelihood of "literal and full compliance" is small, since the purpose of the stamps is to evidence compliance with the provisions of the alcohol tax laws. However, in determining whether appellant would attempt to comply with this requirement, and with those imposed by sections 5179(a) and 5173(a), I doubt that we are permitted to speculate that, in reality, he would not attempt to obey the law. Implicit in the Supreme Court's decision in *Leary* is the notion that regardless of whether, in reality, one who purchases marihuana illegally would attempt to obtain an order form, the Court, in analyzing the substantiality of the risks of self-incrimination, would assume that this was a realistic alternative for the purchaser.[4]

Therefore, even with regard to the registration, qualification bond, and revenue stamp requirements, the hazards of self-incrimination confronting appellant were greater than those confronting Buie. In *Buie,* the Court concluded that the seller would never have an opportunity to complete the order form and disclose his illegal activity.[5] Appellant, on the other hand, by attempting to comply with the requirements of 26 U.S.C. §§ 5170(a), 5173(a) and 5205(a) (2), would reveal his intention to engage in the manufacture of distilled spirits.[6]

Of course, whether the potentially incriminating information provided by the attempt to comply would, in reality, ever be used by law enforcement officials to forge a " 'link in the chain' of evidence tending to establish his guilt," Marchetti v. United States, *supra,* 390 U.S. at 48, 88 S.Ct. at 703, and thus, whether

---

4. If the Court had not made this assumption, the substantiality of the risks of incrimination confronting Leary would have been no greater than those confronting Buie. In other words, if the Court took judicial notice of the fact that illegal purchasers of marihuana do not, in reality, attempt to comply with the requirement of obtaining an order form, the risks of self-incrimination confronting Leary would have been minimal. Accordingly, the significant distinction between *Leary* and *Buie* would seem to be that Leary could have attempted to obtain an order form and incriminate himself where as Buie could not, since the obligation to procure the order form is on the purchaser. *See* 26 U.S.C. §§ 4705 (a), 4742(a). In the present case, the various obligations imposed by the statutory provisions in question are on the distiller.

5. In *Buie,* the Court also observed that the statutory obligation to furnish the information requested on the order form was on the buyer and that this may eliminate the problem of "self-incrimination", as that term is ordinarily understood. In the present case it is the distiller himself who is obligated to disclose his activities.

6. The fact that appellant would be revealing an intention to violate the law at some future time may reduce the substantiality of the risks of self-incrimination, but it would not make these risks trifling or imaginary. "We see no reason to suppose that the force of the constitutional prohibition is diminished merely because confession of a guilty purpose precedes the act which it is subsequently employed to evidence. * * * [A]lthough prospective acts will doubtless ordinarily involve only speculative and insubstantial risks of incrimination, this will scarcely always prove true." Marchetti v. United States, 390 U.S. 39, 54, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968), overruling United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953), and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955).

the hazards of incrimination involved in such an attempt are "real and appreciable", involves some conjecture. The court has before it no factual data indicating the likelihood that the information contained in unsuccessful applications to register, to post the qualification bond, and to obtain revenue stamps is passed on to other law enforcement officials. However, in the absence of such data, I would resolve the doubts in favor of the applicability of the Constitutional privilege.

Until recently, an exchange of information between treasury officials and prosecuting officers of states, counties, and municipalities with regard to persons paying the special taxes assessed on the manufacture of distilled spirits was mandated by 26 U.S.C. § 6107. Thus, the channels of communication have been established. Moreover, although 26 U.S.C. § 6107 has been repealed, see n. 2, supra, there are still no restrictions imposed upon the use of the potentially incriminating information contained in an application for registration or a qualification bond form. See Grosso v. United States, 390 U.S. at 66, 88 S.Ct. 709.

It is also relevant that "other methods, entirely consistent with constitutional limitations," Haynes v. United States, 390 U.S. at 98, 88 S.Ct. at 731, could be employed to obtain the information provided by compliance with the statutory provisions in question. See generally Counselman v. Hitchcock, 142 U.S. 547, 585, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). See also Adams v. Maryland, 347 U.S. 179, 74 S.Ct. 442, 98 L. Ed. 608 (1954); Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Thus, permitting appellant to invoke the privilege against self-incrimination in order to prevent criminal prosecution for failing to comply with these provisions would not "prevent the effective regulation or taxation by Congress" of distilled spirits. Haynes v. United States, supra, 390 U.S. at 98, 88 S.Ct. at 731.

Accordingly, I would hold that sections 5179(a), 5173(a) and 5205(a) (2),[7] as well as section 5180(a), compelled appellant, upon threat of criminal punishment, to disclose his illegal activities and that the hazards of self-incrimination which would have resulted from disclosure were "real and appreciable". I would therefore reverse his convictions on counts one, three, four, five and eight.

COMBS, Circuit Judge (dissenting in part).

I concur in Judge McCree's dissent. I am unable to find within the rule of Marchetti any distinction between "moonshiners" and members of "the syndicate."

O'SULLIVAN, Senior Circuit Judge (dissenting in part).

I concur in Judge McCree's dissent. I do so because I believe that his opinion is more consistent with Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) than the carefully prepared opinion of Judge Edwards. I believe that, whether operating in Michigan, Tennessee, or elsewhere, "moonshiners" make up a "group inherently suspect of criminal activities" just as much as the "big time" gamblers who enjoy the protection of Marchetti. Emphasis is placed upon the fact that the alcohol tax laws are "essentially noncriminal". This is so, it is argued, because such laws exist primarily to raise revenue. Such laws do, however, provide criminal sanction for their violation and in most states, while the manufacture of distilled spirits is not totally forbidden, the activity for which this

---

7. The fact that counts 3 and 4 are directed at appellant's possession and transportation of unstamped containers, and not at his failure to obtain revenue stamps per se, is irrelevant, since the effect of 26 U.S.C. § 5205(a) (2) is to require a distiller to obtain revenue stamps in order to lawfully possess and transport distilled spirits in containers. See Haynes v. United States, 390 U.S. 85, 90–95, 88 S. Ct. 722, 19 L.Ed.2d 923 (1968).

defendant was convicted—"moonshining"—is criminal activity wherever it is carried on.

Distinction is asserted to exist because the statute involved in *Marchetti* was purposely passed by Congress to interrupt criminal conduct—"big time" gambling carried on, in part at least, by "the syndicate", a part of organized crime. It is argued that Congress cannot impair the Fifth Amendment rights of those so engaged, but may forbid use of the Fifth Amendment by those who choose to violate the revenue laws relating to distilled spirits. The "moonshiner" has been as effectively deprived of the protection of the Fifth Amendment when he is convicted for failure to announce his intention to engage in criminal activity as is the interstate gambler, convicted for failure to register and disclose his intention to engage in crime. I am unable to discern legitimacy in the nuances employed to find distinction between the "moonshiner" and members of "the syndicate". So long as *Marchetti* is the law, it should be followed without discrimination.