**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jay V. BALL, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Boyd RIDINGS, Sr., Defendant-Appellant.
Nos. 20005, 20006.**

United States Court of Appeals,
Sixth Circuit.

June 23, 1970.

Petition Dismissed Aug. 28, 1970.
See 91 S.Ct. 7.

Dale Quillen, Nashville, Tenn., for appellant Ball.

Ben W. Hooper, II (Court-appointed), Newport, Tenn., for appellant Ridings.

W. Thomas Dillard, Asst. U. S. Atty., Knoxville, Tenn., for appellee; John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., on brief.

Before CELEBREZZE, PECK and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

These are appeals by two of eight co-defendants from a conviction for violating certain provisions of the United States Code relating to distilled spirits

in the Eastern District of Tennessee. Appellants Jay V. Ball and Boyd Ridings, Sr. were each convicted by a jury verdict on two counts: (1) conspiring with certain co-defendants to defraud the United States by possessing, selling and otherwise dealing in nontax-paid distilled spirits 18 U.S.C. § 371 (1964) and (2) aiding and abetting each other in the possession, transportation, sale and transfer of a quantity of nontax-paid distilled spirits. 18 U.S.C. § 2, 26 U.S.C. §§ 5173, 5179, 5601(a), 5604(a) (2), 5205(a) (2) and 7206(4). Each of the Appellants was sentenced to five years imprisonment on the "aiding and abetting" count and placed on probation on the "conspiracy" count.

Several evidentiary issues are raised by counsel on appeal which require us to state the facts of the case in some detail. The testimony of the Government's witnesses, who related their observation and dealings with each of the eight co-defendants was substantially unrebutted. Their testimony supports the following version of the facts.

Agents of the Alcohol, Tobacco, and Firearms Division of the Department of the Treasury employed in August, 1968, Mrs. Billie Jean McCurry to work in an undercover capacity at a rate of $9.00 per day plus certain expenses. Mrs. McCurry's job was to attempt purchase of nontax-paid whiskey from Appellant Ball. No mention was made to her—and she testified she did not expect—that she might receive an additional sum if Appellant Ball did attempt to sell nontax-paid whiskey to her. Also, at the time she was hired she was instructed as to the law of entrapment and told only to provide an opportunity for any of the Appellants to sell her nontax-paid whiskey, not to induce or persuade them to engage in such unlawful transactions. Accordingly, she was to offer $6.00 per gallon which was allegedly the prevailing market price for the nontax-paid spirits involved.

The Government also produced strong photographic and oral testimony that certain of the co-defendants including Appellant Ridings were present at or about the time certain nontax-paid whiskey was unlawfully manufactured, concealed, possessed and transported. Further, the Government produced a series of its agents and Mrs. McCurry to testify that Appellant Ball agreed to sell 100 gallons of nontax-paid whiskey to Mrs. McCurry at $6.00 per gallon and that he inspected and arranged for the place of delivery of that whiskey.

Finally, the Government introduced a conversation between its Agent Riddle, Mrs. McCurry and Appellant Ridings, who introduced himself as "Jay's [Appellant Ball's] man." Agent Riddle testified that Appellant Ridings stated that he had "been to that place and unloaded," that it was "an awful good place [to deliver liquor]," and that he had been in the liquor business all his life and the liquor he hauled was "good." Appellant Ridings then was purported to have said that "Jay [Ball] said it would be $6 [per gallon]" which would be $600 for the hundred gallons delivered. Mrs. McCurry then paid Appellant Ridings.

After the Government's primary evidence was submitted, Appellants Ball and Ridings pled that they were unlawfully entrapped into any crimes which they may have committed. There was, however, considerable ambiguity in the colloquy between the Court and counsel for the Appellants as to the scope of Appellants' admission by their plea of unlawful entrapment and as to whether they were pleading unlawful entrapment as to both the "conspiracy" count and the "aiding and abetting" count. In an attempt to clarify any ambiguity which had arisen the Court engaged in the questioning, apart from the jury, of both counsel. In that this questioning gave no clear resolution of the issues, the Trial Judge questioned, in the presence of the jury, Appellant Ball, who had previously denied his participation in the aiding and abetting. The Trial Judge's questioning reveals that he was trying to elicit from Appellant Ball whether he understood what the indict-

ment charging "aiding and abetting" meant. When Appellant Ball realized that voluntary participation in making contacts for the sale of nontax-paid whiskey was "aiding and abetting" within the meaning of the indictment, he willingly admitted that he had engaged in those acts, and contended he was entrapped into doing so.

Thereafter, Appellants decided that they wished to plead unlawful entrapment only as to the "aiding and abetting" count and to wholly deny their participation in the "conspiracy" count. Over Appellants' counsel's objection, the Government was permitted to introduce evidence as to the reputation of the Appellants for engaging in unlawful liquor activities just prior to the alleged unlawful activities. It was introduced for the limited purpose of demonstrating a willingness or unwillingness of each of the Appellants to have engaged in the conduct into which they allege they were entrapped. Among those witnesses testifying as to the willingness of Appellant Ball to engage in unlawful liquor activities was Mrs. Langford. Mrs. Langford, who accompanied Mrs. McCurry and Appellant Ball on one occasion, testified as to the conduct and activities of Appellant Ball in arranging for the purchase of certain nontax-paid whiskey and investigation of its place of delivery. While testifying from her memory, she made frequent reference to certain handwritten notes which were in part shown to both counsel. Her corroborating testimony, while cumulative in part, was highly confirmatory of the testimony of Mrs. McCurry that Appellant Ball willingly and affirmatively arranged and implemented the unlawful purchase of whiskey without the enticement of unlawful entrapment.

### Case No. 20,005

On these facts, Appellant Ball raises three issues on appeal. First, whether the Fifth Amendment bars his prosecution both as to the substantive violations of the federal alcohol tax laws and as to the conspiracy to violate those laws.

Second, whether the Trial Judge's questioning of Appellant Ball assumed the role of advocacy and denied him a fair and impartial trial. Third, whether the Trial Judge's failure to permit Appellant's counsel to examine the full notes of a Government agent witness—Mrs. Langford—was prejudicial error. This latter issue was raised by consent of counsel on oral argument.

■ The constitutional issue raised by Appellant Ball was decided adversely to him by this Court in United States v. Whitehead, 424 F.2d 446 (6th Cir., 1970). In *Whitehead* we held:

"The possibility of Appellant's self-incrimination by dint of actual compliance with the statutory provisions attacked herein is considerably less than 'purely hypothetical.' * * * Here federal registration is prohibited unless the registrant is in compliance with state law. This appellant could not, if he had tried, have gotten his name on any list of federal registrants * * *. Since there would have been no conceivable federal statutory benefit from such a disclosure, we cannot perceive how it could be deemed 'compelled' in any Fifth Amendment sense.

"We find no abuse of appellant's Fifth Amendment rights." 424 F.2d at 451.

Similarly, the Appellant in the instant case cannot be deemed "compelled" to incriminate himself by registration under the federal laws. There is no substantive probability that he will incriminate himself by registering where, as here, there is no possibility that he ever intended to engage in activities which could be in actual compliance with the federal alcohol tax laws.

Second, Appellant Ball maintains that his interrogation in the presence of the jury by the Trial Judge assumed the role of advocacy and irreparably prejudiced the Appellant. We disagree.

■ A reading of the transcript of the trial reveals that neither counsel for Appellant Ball nor Appellant Ball were

clear as to whether they wished to assert an entrapment plea as to both counts of the indictment, or only one count; or whether Appellant Ball understood the nature of the charges against him. The Trial Judge's comments and inquiries sought to remedy these areas of confusion. When Appellant realized that an admission of certain material acts would not jeopardize his defense of not guilty by reason of entrapment as to the "aiding and abetting" count, he willingly conceded that he had engaged in certain of the material acts charged. As the United States Supreme Court has noted:

> "In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1468 (1933).

In this vein, a trial judge may, for example, examine a witness to elicit "information necessary to a correct determination of the facts," United States v. Cassiagnol, 420 F.2d 868, 877 (4th Cir. 1970).

■■ Although the Trial Judge is to govern the conduct of the trial, it is not a "desirable practice" for him to interrupt the proceedings by questioning the witnesses. United States v. Lewis, 338 F.2d 137, 141 (6th Cir. 1964), cert. denied, 380 U.S. 978, 85 S.Ct. 1342, 14 L.Ed.2d 272. Further, interrogation of witnesses by the Trial Judge in the presence of the jury is particularly likely to place the Trial Judge in the role of advocate. United States v. Carabbia, 381 F.2d 133, 139 (6th Cir. 1969), cert. denied, 389 U.S. 1007, 88 S.Ct. 564, 19 L.Ed.2d 602. We have considered the context and tone of the Court's questioning, its purpose in examining the Appellant, and its explicit precautionary instruction that no inferences of advocacy should be drawn from its questioning, United States v. Calabrese, 421 F.2d 108, 113 (6th Cir. 1970). We find that the instant questioning was in the proper exercise of the Court's responsibility to govern the trial and did not result in any prejudice to the Appellant Ball.

■ Third, Appellant contends that he should have been permitted to examine the full contents of certain handwritten notes of Mrs. Langford, a Government agent. Mrs. Langford wrote these notes after conversing and travelling with Mrs. McCurry and Appellant Ball for over an hour. They were the basis of a subsequent official report typed by Mrs. Langford and submitted to her husband, who is also a Government agent. After receiving instructions that Mrs. Langford was not to be a witness in the case, the official report was destroyed. Apparently, the statement never came into the possession of the prosecuting attorney and he told the Court that he had never seen any copy of Mrs. Langford's statement.

The Court properly admonished the Government for destroying its official record. The Court then questioned the prosecuting attorney as to whether he had or used a copy of the official statement or notes in the preparation of his case. The prosecuting attorney responded that he did not and that he did not know of the existence of any such statement in the possession of the Government. Upon these facts, the Trial Judge found that these handwritten notes were not a "statement or report in the possession of the United States" for purposes of the Jencks Act, 18 U.S.C. § 3500 (1964). The Court then permitted counsel for the Appellants to examine only that part of the notes to which Mrs. Langford actually referred, rather than the complete text.

On appeal, we have carefully reviewed the full notes of Mrs. Langford. Much of the notes provide relevant information concerning the case which might properly have been entered into evidence under certain circumstances, assuming the Jencks Act does not act as an implied bar to the entry of such evidence. However, we do not reach this

latter question regarding the Jencks Act. While the information contained in the full notes is relevant to the Appellant's case, its omission was not prejudicial error which affected the substantial rights of the parties. Federal Rules of Criminal Procedure, Rule 52(a). *See* United States v. Sheba Bracelets, 248 F. 2d 134, 143–146 (2d Cir. 1957), cert. denied, 355 U.S. 904, 78 S.Ct. 330, 2 L.Ed 2d 259.

Case No. 20,006

Appellant Ridings, whose case was submitted on its briefs, raises two issues on appeal. First, whether Appellant's Fourth, Fifth and Sixth Amendment rights were violated by the introduction into evidence of highly damaging admissions of Appellant Ridings in his conversation with Agent Riddle and Mrs. McCurry. Second, whether the admission of certain reputation evidence after the plea of entrapment was made was reversible error.

Prior to receiving payment for the alleged delivery of 100 gallons of nontax-paid whiskey, Appellant Ridings approached and engaged in conversation the prospective purchaser, Mrs. McCurry and Agent Riddle. In that conversation, Appellant Ridings made some highly incriminating statements while closing the sale of the nontax-paid whiskey. Appellant contends that these statements should be inadmissible evidence because he was the focal point of a criminal investigation at the time he voluntarily spoke with Agent Riddle and Mrs. McCurry and was entitled to be free from any unreasonable search and to be advised of his rights under the Fourth, Fifth and Sixth Amendments.

Each of these broad contentions raised by Appellant were dealt with in detail in Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). In *Hoffa*, the United States Supreme Court held:

"What the Fourth Amendment protects is the security a man relies upon when he places himself or his property within a constitutionally protected area, be it his home or his office, his hotel room or his automobile. * * * [T]he Fourth Amendment [does not] protect a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." 385 U.S. at 301, 302, 87 S.Ct. at 413.

"[N]o right protected by the Fifth Amendment privilege against compulsory self incrimination was violated in this case. * * * [N]o claim has been or could be made that the petitioner's incriminating statements were the product of any sort of coercion, legal or factual. The petitioner's conversations with Partin and in Partin's presence were wholly voluntary. 385 U.S. at 304, 87 S.Ct. at 414.

"The petitioner's * * * argument under the Sixth Amendment needs no extended discussion. * * * There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction. 385 U. S. at 309–310, 87 S.Ct. at 417. (footnotes omitted).

In the instant case, it is undisputed that Appellant Ridings voluntarily approached Agent Riddle and Mrs. McCurry, that he volunteered each admission in the course of his conversation and that not until the end of the conversation did he actually request and receive payment for the delivered nontax-paid whiskey. There is no suggestion of custody or coercion so as to vitiate the voluntary nature of the admissions made. Further, the incomplete and continuing nature of the conspiracy was

ample reason for Agent Riddle to refrain from arresting Appellant Ridings early in the conversation which would foreclose the development of further evidence of the crimes ultimately charged. Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408 (1966).

Appellant Ridings also contends that no evidence should have been admitted as to his reputation for dealing in unlawful liquor activities immediately prior to the alleged entrapment. We disagree.

 In considering an entrapment defense, a jury must make a determination as to the disposition and intent of the alleged entrappee to participate with the alleged entrapper in unlawful activities. In making this factual determination, reputation evidence admitted for the limited purposes of proving the disposition of the accused to willingly engage in the specific criminal conduct involved would be both relevant and helpful to a jury. As the United States Supreme Court, when considering the introduction of certain collateral character issues where the defense of entrapment was raised, observed:

> "The government in such a case is in no position to object to evidence of the activities of its representatives in relation to the accused, and if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon the issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense." Sorrells v. United States, 287 U.S. 435, 451–452, 53 S.Ct. 210, 217, 77 L.Ed. 413 (1932).

While the *Sorrells* case is nearly forty years old, it is still good authority. Thus, in United States v. Osborn, 350 F.2d 497 (6th Cir. 1965), this Court upheld a District Court charge which stated:

> "[A]n existing disposition to commit a similar offense is an important factor to consider in determining whether there was a subsequent entrapment."

The United States Supreme Court affirmed this Court's decision in the *Osborn* case, observing in a footnote:

> "Moreover, it is settled that when the defense of entrapment is raised, evidence of prior conduct tending to show the defendant's predisposition to commit the offense charged is admissible." Osborn v. United States, 385 U.S. 323, 332 n. 11, 87 S.Ct. 429, 434, 17 L.Ed.2d 394.

 We find that admission of reputation evidence for limited purposes is a proper government response to the defense of entrapment, notwithstanding that the accused has not otherwise put his reputation in issue.

The judgments of the District Court are affirmed.