**UNITED STATES of America, Appellant,**

v.

**Leo POTISHMAN, Julian Scott, Transit Grain Company and Charles J. Winters, Appellees.**

**No. 15533.**

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1956.

Cameron, Circuit Judge, dissented.

John A. Lowther, Asst. U. S. Atty., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellant.

Saul Stone, New Orleans, La., Dan Moody, Austin, Tex., Wisdom & Stone, New Orleans, La., Dan Moody, Jr., Austin, Tex., for appellees.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

The district court dismissed an indictment against the appellees and the Government appeals. Count 1 of the indictment charged a conspiracy under the provisions of § 714m(d), Title 15, U.S.C.A.,[1] to violate the provisions of § 714m(a),[2] Title 15, U.S.C.A., and § 714m(c)[3], Title 15, U.S.C.A. The remaining three counts are substantive counts charging violations of § 714m(a), Title 15 U.S.C.A.

The dismissal was predicated largely upon former jeopardy, estoppel, or res judicata, on account of previous criminal proceedings had in the federal courts at Houston against some of the defendants and at New Orleans against all of them.

Winters was not named in the Houston indictment. Potishman, Scott, Transit Grain Company, and a man named Fellrath were indicted at Houston on a ten-count indictment, one count charging conspiracy and nine substantive counts. Upon arraignment each of the defendants pleaded not guilty. At a later date, the defendants were rearraigned, Transit again pleaded not guilty to all counts, and the individual defendants pleaded guilty to Counts 5 and 6 and not guilty to the remaining counts. On that day the Government moved to dismiss the remaining counts as to the individual defendants and all of the counts as to Transit. On the same day, the court

1. "(d) Whoever conspires with another to accomplish any of the acts made unlawful by the preceding provisions of this section shall, upon conviction thereof, be subject to the same fine or imprisonment, or both, as is applicable in the case of conviction for doing such unlawful acts."

2. "(a) Whoever makes any statement knowing it to be false, or whoever willfully overvalues any security, for the purpose of influencing in any way the action of the Corporation, or for the purpose of obtaining for himself or another, money, property, or anything of value, under sections 714–714o of this title, or under any

other Act applicable to the Corporation, shall, upon conviction thereof, be punished by a fine of not more than $10,000 or by imprisonment by not more than five years, or both."

3. "(c) Whoever shall willfully steal, conceal, remove, dispose of, or convert to his own use or to that of another any property owned or held by, or mortgaged or pledged to, the Corporation, shall, upon conviction thereof, be punished by a fine of not more than $10,000 or by imprisonment for not more than five years, or both."

accepted the pleas of guilty, dismissed the counts as requested by the Government,[4] directed the probation officer to make a pre-sentence investigation, and postponed sentencing until a later day, at which time the individual defendants appeared, and, after a pre-sentence hearing, were sentenced.

There is no basis on which the Houston indictment could support a defense of former jeopardy as to Winters or as to Transit for Winters was not named in the Houston indictment, and the Government dismissed all counts as to Transit. The record does not show that the court ever entered upon trial of any of the defendants under the Houston indictment, except upon Counts 5 and 6 to which the individual defendants pleaded guilty. Those two substantive Houston counts charged false statements with respect to grain at the Houston elevator, and clearly do not involve the same offenses as the three substantive counts of the instant indictment which charge different false statements made on different days as to different grain in the New Orleans elevator. Manifestly then, jeopardy did not attach at Houston as to the matters charged in the present indictment.

■ The defendants Potishman, Scott and Transit urged that the Government was estopped by an alleged agreement made between them and the Government attorneys at Houston, that the pleas of guilty of the individual defendants at Houston would completely and finally dispose of all matters charged in the entire indictment. No proof of such an agreement was attempted, nor did the district court require any such proof. Instead, the judge, after stating at length his familiarity with the general practice of accepting pleas of guilty on some counts and dismissing the others as a complete and final disposition of all matters contained in the indictment, in effect, placed upon the Government the burden of proving affirmatively an agreement to leave the defendants open to later prosecution on the matters charged in the dismissed counts.[5]

In Buie v. United States, 5 Cir., 76 F. 2d 848, 849, Judge Foster speaking for this Court said:

4. The judgment reads:

"On this 30th day of October, 1953, came the attorney for the United States of America and the defendant, Leo Potishman, appeared in person and with counsel, and both parties announcing ready, the said defendant, having been served with a copy of the Indictment, was rearraigned; whereupon the defendant entered a plea of guilty to Counts 5 and 6. Counts 1, 2, 3, 4, 7, 8, 9 and 10 were dismissed on motion of the United States Attorney.

"And the Court, having heard the plea of the defendant and all questions of fact as well as of law, finds the defendant guilty as charged in Cts. 5 and 6.

"It is considered by the Court that the defendant be, and he is hereby adjudged guilty of unlawfully making, etc., material false statements, Vio. Sec. 714m(a), Title 15, U.S.Code, as charged in Counts 5 and 6 of the Indictment.

"The probation officer is directed to make a presentence investigation, and this case is passed for sentence until November 11, 1953, at 9:30 A.M.

"/s/ Allen B. Hannay.
Judge."

The docket entry was as follows:

"Oct 30, 1953: Defts. Leo Potishman, Julian Scott and William Fellrath rearraigned—Enter plea of Guilty to Cts. 5 and 6. Govt. moved to dismiss Cts. 1, 2, 3, 4, 7, 8, 9 and 10 as to all three defendants—accepted by Court.

"Govt. motion to dismiss Cts. 1, 2, 3, 4, 5, 6, 7, 8, 9 & 10 against deft. Transit Grain Co.—accepted by Court."

5. "* * * the government is bound by what took place, unless there was an agreement, that it can be shown that there was agreement between the District Attorney and defendants' counsel to accept the plea of guilty on certain counts and leave the others open to formal prosecution or jurisdiction. Unless there is proof offered that there was such an arrangement made, we think the plea of former jeopardy must be sustained. There is no requirement of proof in our practice, but there must be proof of an exception to it.

* * * * *

"If there is no evidence from the former counsel, or the Judge, that this was an exception to the general practice, we think that the plea of former jeopardy must follow * * *."

" * * * On this conflicting evidence it was for the District Judge to say whether the agreement was proven. But we deem that immaterial. It is elementary that an indictment may be dismissed and the defendant reindicted for the same offense, if he had not been put in jeopardy. Appellant cites a number of cases to the effect that the United States is bound by an agreement entered into by her counsel in a civil case; other cases holding that where revenue claims have been compromised and paid criminal prosecutions are barred, and other cases holding that where witnesses have been compelled to give testimony against themselves before an investigating authority immunity results. It would be useless to review these cases, as none of them are in point, and we are not aware of any decision, either controlling or persuasive, that would support the contention of appellant. We have no hesitancy in holding that the government was not estopped to prosecute appellant in this case regardless of whether an agreement was made as alleged."

See also, District of Columbia v. Buckley, 75 U.S.App.D.C. 301, 128 F.2d 17, 20; 22 C.J.S., Criminal Law, § 257.

Certainly, in the present state of the record, it cannot be held that the Government is estopped by anything that occurred in the Houston proceedings.

6. "The Court will deny the motion to dismiss the indictment as to all of the Defendants, with exception of Count 1, which it dismisses on the ground that it is duplicitous."

7. "Now comes the United States of America, through the undersigned, and suggesting that leave of the Court to file a dismissal of the indictment herein is desired, does now enter, subject to the granting of such leave, a Nolle Prosequi in this cause.
"/s/ Prim B. Smith, Jr.
"Assistant United States Attorney
"Granted: at New Orleans, Louisiana, this 17th day of November, A.D. 1954.
"/s/ J. Skelly Wright
"Judge"

The conspiracy count of the indictment brought at New Orleans was dismissed by the court on the ground that it was duplicitous.[6] Thereafter the Government, with leave of the court, entered a nolle prosequi of the entire indictment.[7] The judgment on motion to dismiss appears only in, and must be considered as limited by, the judge's memorandum (footnote 6, supra).[8] The ruling was not on the merits but on a formal or technical defect of pleading and the judgment is no bar to a second action.[9]

The conspiracy count in the New Orleans indictment charged the defendants with conspiracy "to defraud the Commodity Credit Corporation and the United States of America, and to violate Title 15, United States Code, Section 714m(a) and 714m(c)." It thus charged both a conspiracy under the general conspiracy statute, § 371, Title 18, United States Code,[10] and a conspiracy under § 714m (d), Title 15, United States Code Annotated (footnote 1, supra). The conspiracy count in the present indictment omitted any charge of conspiracy to defraud the Commodity Credit Corporation or the United States under § 371, Title 18, United States Code, and confined the conspiracy charged to one under § 714m(d), Title 15, United States Code Annotated, thus curing any duplicity that inhered in the New Orleans indictment.

The other grounds of the motion to dismiss were not relied on by the district court and are not argued in the appel-

8. Aetna Life Ins. Co. v. Eaton, 2d Cir., 43 F.2d 711, 715.

9. Gould v. Evansville & C. R. Co., 91 U.S. 526, 534, 23 L.Ed. 416; St. Louis, Southwestern Ry. Co. v. Bolinger & Co., 5 Cir., 17 F.2d 924, 925; Passailaigue v. Herron, 5 Cir., 38 F.2d 775, 776; 50 C.J.S., Judgments, § 643, pp. 77, 78.

10. See 15 U.S.C.A. § 714m(e), providing that general penal statutes apply with certain exceptions.

lees' brief. They appear to us so clearly without merit that we forego further discussion.

The judgment is

Reversed.

CAMERON, Circuit Judge (dissenting).

The Court below found that appellees had indubitably been punished in a former prosecution for the entire crime charged in the indictment now before us and that it would not be legal or right to punish them again for the same crime. This finding was based upon the judgment entered in the former proceeding, and the evidence on which it rested (consisting of statements made by counsel and others in open court), together with the universal custom, known to the Court below, prevailing where that judgment had been entered and other relevant factors, also known to the Court below. The majority opinion reverses that judgment on the ground that there is not sufficient in the record to sustain those findings. Because I think that the majority's action tends to weaken the faith and trust mutually placed in each other by the Court and its officers, the attorneys, so vital to the performance of the judicial function, I am constrained to set out the grounds of my dissent.

The essence of the present indictment (known as Dallas indictment) brought in February, 1955 is that appellees engaged, between May, 1951 and January, 1953, in carrying out a conspiracy to defraud the Commodity Credit Corporation by making false statements to it whereby it was induced to purchase from Transit Grain Company inferior Canadian wheat under such circumstances as to amount to a conversion under 15 U.S. C.A. § 714m(a) and (c).

The essence of a prior indictment brought in October, 1953 at Houston, Texas (known as Houston indictment) was formed of precisely the same facts and cause of action.[1] In each indictment count one was the conspiracy count, and in each indictment certain acts done in furtherance of the conspiracy were set forth in additional counts as substantive offenses. There were minor variations between the indictments with respect to the overt acts charged. But each of the three efforts at prosecution had as its base the same alleged criminal course of action over the same period of time.

The Court below found that, by agreement between the parties and with the sanction of the Court, the Houston indictment had been disposed of under such circumstances as to make it clear that punishment was there meted out to cover the entire offense embraced in all of the counts of the indictment and that all parties, including the Court, intended that there should be no further punishment put upon the appellees for the activities embraced within that indictment. It is plain that this is true as a matter of fact, but the Government attempts to escape the effect of what was there done because the actors in the Houston drama adopted the expedient of having sentence imposed under two counts of that indictment while dismissing the remaining counts. A consideration of the record of the handling of the Houston case, which was introduced in the Court below without objection, will show that the true facts support the findings of the Court below.

The docket entries of the Houston Division show that the indictment was filed October 5, 1953, that appellees were arraigned October 8, 1953, and pled not guilty to all counts and that the *case was passed to January 4, 1954*. The findings of the Court below disclose that, "Later and before proceeding further, a conference was held between the defendants' counsel and the Government counsel, after which the attorneys appeared in court * * * *" The criminal docket next contains an entry dated October 30, 1953, that appellees entered pleas of guilty to

---

1. A third indictment growing out of the same identical facts was brought in New Orleans, Louisiana, but it does not play an important part in this phase of the decision.

counts five and six and that the Government moved to dismiss the remaining counts as to appellees and all counts as to defendant, Transit Grain Company, and that this arrangement was "Accepted by the Court".[2] On the same day an order was entered reciting that appellees entered a plea of guilty to counts five and six of the indictment and that the remainder of the counts were dismissed on motion of the United States Attorney. The order recites further that it was entered by the Court after "having heard the plea of the defendant and *all questions of fact as well as of law* * * *." The probation officer was directed to make a pre-sentence investigation and the case was passed for sentence until November 11, 1953. The findings of the probation officer do not appear in the record, but the Court below remarked that they "will show very largely what the Court had in mind when he assessed the sentence and if he assessed a sentence that embraced what is now to be presented to this Court".

On November 11th, the Assistant United States Attorney (the same Attorney who had signed the Houston indictment) appeared for the Government and the appellees appeared in person and by counsel, and the Court called upon each attorney for a showing which the Court might consider as the basis for passing sentence. The statements of all of the attorneys dealt with the entire course of dealing embraced in all of the counts of the Houston indictments.[3] The transcript of what transpired in the full hearing before Judge Hannay at Houston shows that these two counts were mentioned only casually a time or two, while all of the attorneys talked in detail of the 1,000,000 bushels described in the conspiracy count and constituting the sum total of all of the wrongdoing embraced

in all of the counts. We set forth at this point a portion of the statement of the Assistant United States Attorney to Judge Hannay:

"The time covered in the indictments begins in 1950 * * * Beginning in the year 1950, Transit began purchasing quantities of Canadian Grain. The grain in question was not imported by Transit but was purchased by them after it had come into the United States. They bought, over a period of time there from 1950 and 1951, in excess of 1,000,000 bushels of wheat that had been imported into the United States as exempt from the quota with the notation unfit for human consumption. That doesn't mean that the wheat is actually unfit for human consumption because the tariff requirements in that respect are different from the food and drug requirements. * * * Approximately 1,000,000 bushels of wheat, 650,000 bushels approximately was shipped in bond and in custom bond to the Houston Public Elevator. The balance was shipped to the New Orleans Elevator. * * *

" * * * they shipped over 650,000 bushels of Sample Grade Canadian wheat, and in addition shipped other Sample Grade wheat and grain to the total of almost 300,000 bushels during the period from June 1950 to the early part of February, 1952. * * * Commodity Credit Corporation would have paid approximately $79,000.00 more than they should, about that much more than they got the value of in accord with the book entries. * * * "

Every word of that statement referred to the conspiracy count giving the over-

---

2. The emphasis is supplied here and throughout this opinion unless otherwise noted.

3. The plea of guilty was to the fifth and sixth counts; the fifth count charged a false statement by appellees to Commodity Credit Corporation by a writing dated May 22, 1951 covering a single item of 55,000 bushels of wheat; the sixth count charged a false statement by appellees in a writing dated February 28, 1951 covering 15,300 bushels of wheat.

all picture of the activities charged against appellees and no part of it referred to the items covered by counts five and six. The Court asked Government counsel a number of questions concerning the total profit which appellees derived from the transactions during the whole period; and questions of income taxes, brokerage fees and the like were fully discussed. The Government attorney's statement also dealt with the extent to which the activities of appellees were morally wrong and was disposed to minimize that feature. The Court heard a number of character witnesses also. The Assistant United States Attorney spoke a number of times during the long discussion, and, towards the last of the hearing, summed up the situation in these words and with this recommendation:

"I am thinking along here, now, with the Court. I don't believe, in my opinion, that justice would require that *any one of these men at that time of life and with their past record* should be given any time to serve in jail, or the penitentiary, also in view of the fact that they are able to pay a substantial fine. For that reason, my recommendation is that a very substantial fine be imposed as to each of the three defendants and the Court not impose any jail or penitentiary sentence."

At the conclusion of the hearing Judge Hannay levied fines against appellees of $20,000.00 each, including also penitentiary sentences to run concurrently and to be suspended, and the appellees were placed on probation. All of those proceedings were taken in the Houston Division under Judge Hannay on November 11th.

Following the enforcement of those sentences, the Government proceeded to bring an indictment in New Orleans based upon the same facts and cause of action. The Court there dismissed the conspiracy count for duplicity, whereupon the Government dismissed the remaining counts of the indictment. The Dallas indictment now before us was then brought in February, 1955. In the course of sustaining a motion by appellees to dismiss the indictment, the Court below entered written findings of fact from which a part is here quoted:

"Our view is that the indictment relates to one transaction, a portion of which was to be consummated in Houston and another portion in New Orleans. * * * We consider the two acts in [as] the same offense and that two prosecutions may not be had therefor.

"It is urged that the Government at the Houston prosecution did not dispose of the entire case that there was a plea of guilty to only two counts. It appears, however, from the uncontroverted record and representations of the respective parties to the Court, that when the Houston case was called for trial before Judge Allan Hannay that a plea of not guilty was entered on all counts, but after a conference was held between the defendants' counsel and the Government's attorney that the defendants then came into court and entered a plea of guilty to two counts, Nos. 5 and 6, and that the Government counsel then dismissed all the other counts in the case.

"The proceeding has occurred in the courts of our country time without number and during our many years at the bar, engaged much of the time in criminal practice where there were several cases against a defendant or several counts charged against him in one case and the defendant and the District Attorney entered into open court and the defendant pled guilty to one case or one count and the government dismissed all other counts or cases, *that the parties intended to make a disposition of the entire controversy* and *that the dismissal was done for the purpose of definitely and finally disposing of the entire case.* And while on the Bench, we have seen the same occur scores of

times and *have never had it insisted that the counts dismissed could be again revived.* We do not feel that the government is in position to do so, nor could the defendant.

\* \* \* \* \* \*

"That has been our understanding in the general practice of law. It has been our uniform practice on the bench and in these forty-five years we have never varied from it or *seen a case where there was an attempt to vary from it.*"

These findings and the statement of counsel upon which they were based reflect beyond doubt that the sentences imposed by the Houston Court were predicated upon the offense charged by that indictment as a whole and not upon the relatively insignificant offenses covered by the fifth and sixth counts. The real right of the thing, so the Court felt, was that, having paid the full penalty once, the appellees should not be called upon in its court to suffer again for the same offense. In so doing, it looked to the language of the judgment itself, but it looked beyond that language to the facts attending the entry of the judgment. It based its decision upon substance, refusing to be chained absolutely to form. It searched for and found the truth, and felt itself bound by it rather than the mechanics[4] employed in the entry of the judgment. It felt itself beholden chiefly to the spirit which giveth life rather than to the letter which killeth.

This is not to say that the record before the Court below did not furnish ample support for the action under review. It is not possible to read the statements of Court and counsel upon which Judge Hannay acted in entering the Houston judgment without perceiving clearly that the Judge was weighing, with the help of all counsel, the gravity and extent of the entire accusations contained in the Houston indictment; and that the punishment inflicted represented the Court's judgment as to what was proper based upon the whole course of dealings. It is equally clear that the Government counsel, who recommended the disposition which Judge Hannay made of the charges, intended that the punishment meted out should cover the whole of the offense charged in the entire indictment.

The law, too, sanctions the findings of the Court below and the procedures by which they were reached. A judgment is the product of facts, constituting a merger of the pleadings, the proof, the actions and the findings taken and entered in arriving at it. A judgment is to be construed like other written instruments and the determinative factor is the intention of the Court. As is the case with other writings, if there is doubt about the scope and meaning of the terms used it is proper to admit extrinsic evidence to establish just what was before the Court upon which the judgment was predicated.[5]

4. It is suggested that appellees ought to have made the record of the Houston proceeding letter perfect by permitting all of the counts in the indictment to remain alive, introducing enough proof to satisfy the technical requirements of double jeopardy. This would have introduced an element of sham wholly lacking in the mechanics actually used at Houston which, as found by the Court below, is the universal way of disposing of an entire indictment in that area, even though the plea of guilty relates to a part only of it.

5. 30 Am.Jur., Judgments, Par. 31, p. 834; ib. Par. 284-5, pp. 998-9. In Kelliher v. Stone & Webster, Inc., 5 Cir., 1935, 75 F.2d 331, 333, this Court used the following language in outlining the propriety of considering extrinsic evidence: " 'It is of the essence of estoppel by judgment that it is certain that the precise fact was determined by the former judgment.' De Sollar v. Hanscome, 158 U.S. 216, 15 S.Ct. 816, 818, 39 L.Ed. 956. 'To this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record \* \* \* the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment,

Moreover, it is the general rule of interpretation applied to a consent judgment that; "A judgment by consent is to be construed as if the parties had entered into a written contract, duly signed and delivered, embodying therein the terms of the said judgment." [6] From this it follows that universal custom enters into and becomes a part of every consent judgment just as it does every contract. "While evidence as to usages and customs is received with caution in all cases, there are well established general rules governing the admissibility of such evidence. When the essential elements or conditions of the existence of a valid usage or custom are shown, such usage or custom is to be given effect as one of the terms of the contract and as binding on the parties as though it were written. The broad general rule is that proof of a valid usage or custom is admissible to annex incidents to a written instrument, to aid in its construction, and to ascertain the intention of the parties in reference to matters about which the contract is silent * * *" 55 Am. Jur., Usages and Customs, Sec. 27, pp. 287–8. And see, to the same effect, Bliven v. New England Screw Co., 23 How. 420, 64 U.S. 420, 431, 16 L.Ed. 510. There can be no doubt about the establishment of the universal custom here because the Court supplied it out of its own knowledge and it has been nowhere challenged.

Nor are the decisions relied upon by the Government and cited in the majority opinion [7] controlling. They involved efforts to interpose executory and controverted agreements of Government attorneys and the Court refused to enforce those agreements. But the situation here is quite different. Every step taken in considering and disposing of the Houston indictment was under the watchful eye of the Court and the judgment of sentence was entered only after a full hearing. That judgment was born of and confirmatory of the events and representations leading to it. The judgment stands fully explained, and the intention of the Houston Court appears entirely clear in the light of the evidence heard by Judge Hannay and interpreted with the aid of the universal customs and the other factors well known to the Court below.

To fail to uphold the Court below in its findings and judgment is to weaken the judicial process at a vital point. In the federal system the success or failure of the functioning of this process is lodged largely in the hands of the District Judges. They deal with things as they are, with situations according to the real truth of them. They have conferences without number by calling counsel to the bench during trial, and they confer likewise in their chambers with attorneys for the respective litigants. The tendency of procedural rules [8] is towards utilizing conferences between court and counsel to shorten trials and approach more speedily and easily to the ends of justice. It is inevitable that a multitude of things happen in the course of such handling which do not find their way onto the printed page for our use.

This gives the trial judge a "feel" and insight and appreciation which an appellate court cannot hope to approach. As indicated by the Court below, a very large percentage of cases, civil and criminal, are disposed of by procedures similar to those unfolded by this record. It would not be possible for the courts to function efficiently unless the vast majority of cases could be disposed of without trial. It is absolutely necessary to place

---

and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible.' Russell v. Place, 94 U.S. 606, 608, 24 L. Ed. 214."

There can be no doubt about the propriety of considering everything which happened in the Houston Court because that was admitted not only without objection, but by stipulation of the parties followed by order of the Court.

6. 31 Am.Jur., Judgments, Par. 462, p. 107.

7. e. g. Buie v. United States, 5 Cir., 76 F. 2d 848.

8. See e. g. Rule 16, Fed.Rules Civ.Proc. 28 U.S.C.A.

wide discretion and trust in such matters in the District Judges if the system is to succeed. It ill becomes us, in our cloistered isolation, to look with too critical an eye upon these functionings of the judicial process so essential to the administration of justice.

The cause of justice will be set back immeasurably if those representing, for the time being, this ponderous organism which is our government are to be repudiated and their actions nullified by the accident of change of personnel [9] goaded by the importunities of overzealous federal functionaries who are apparently unwilling to accept the judgment, as to extent of punishment, when it is pronounced by those clothed with that responsibility.

This record sustains the action of the Court below. What it was attempting was to make the Government do right, just as individuals must do. I am impelled to approve and applaud such action. Therefore, I dissent.

---

9. In its findings the Court below stated: "The government apparently feels that penalties assessed by Judge Hannay were inadequate * * *" This thought is buttressed by the fact that the new prosecutions were not brought at Houston, where all of the facts are known, but at other points in an effort apparently to find a climate more favorable to the Government's views.