UNITED STATES of America,
Appellee,

v.

John A. LIGUORI, Appellant.

No. 670, Docket 34516.

United States Court of Appeals,
Second Circuit.

Argued June 3, 1970.

Decided July 17, 1970.

Daniel H. Greenberg, New York City, for appellant.

Jerome C. Ditore, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty. for the Eastern District of New York, Joseph W. Ryan, Jr., Asst. U. S. Atty., of counsel), for appellee.

Before LUMBARD, Chief Judge, and SMITH and KAUFMAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

On March 29, 1966, appellant Liguori and three co-defendants were indicted on six counts arising out of their acquisition, possession and concealment of 23.-361 kilograms of marihuana. Count numbers three and five charged appellant with knowingly and unlawfully acquiring marihuana without paying the required transfer tax, in violation of 26 U.S.C. § 4744(a). The other counts charged conspiracy and violations of 21 U.S.C. § 176a (concealing and dealing in marihuana known to have been smuggled into the United States). He pleaded not guilty to all counts on April 14, 1966.

More than two years later, on the eve of trial, August 19, 1968, Liguori changed his plea to guilty on count number three. On October 29, 1968, Judge Manuel Real, United States District Judge for the Central District of California, sitting in the District Court for the Eastern District of New York, sentenced Liguori to five years imprisonment, to run consecutively with an unrelated sentence he was then serving. On the same day, on motion by the Assistant United States Attorney, Judge Real dismissed the charges against Liguori in counts one, two, four, five and six.

On Liguori's motion, Judge Real, February 27, 1969, reduced the sentence to three years imprisonment to run consecutively with the unrelated sentence. No appeal was taken.

On May 19, 1969 the Supreme Court decided Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), which held that a timely assertion of the privilege against self-incrimination is a complete defense to prosecution under 26 U.S.C. § 4744(a) for obtaining marihuana without having paid the transfer tax required by 26 U.S.C. § 4741(a).

Thereafter on September 2, 1969, Liguori filed a motion to the sentencing court pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence on the ground that his fifth amendment privilege against self-incrimination under the Leary decision precluded his punishment under 26 U.S.C. § 4744(a). On October 16, 1969, Judge Real denied the motion without a hearing, holding that Liguori's guilty plea, entered with the assistance of counsel and with awareness of the nature of the offense and consequences of the plea, waived any claim he might have to applicability of the Leary deci-

sion to his conviction. From this decision, Liguori appeals.[1]

Since we find that *Leary* should be given retroactive application (as to that portion dealing with the privilege against self-incrimination), that Liguori's assertion of the privilege on collateral attack was timely, and that his guilty plea did not waive his privilege against self-incrimination, we reverse the order of the district court.

The Supreme Court in *Leary*, following its analogous treatment of the gambling taxes in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) and the registration requirement under the National Firearms Act in Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), refused to hold that 26 U.S.C. § 4744 requiring a transferee of marihuana to pay a tax is unconstitutional. Instead it ruled that a timely assertion of the privilege against self-incrimination is an absolute defense to prosecution under that section. Thus the statute continues to be viable and prosecutions under it could be successful if, for instance, a corporation acquired marihuana without paying the transfer tax, since a corporation is not entitled to assert the privilege against self-incrimination.[2] See George Campbell Painting Corp. v. Reid, 392 U.S. 286, 288–289, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968). Except for such unique situations "we believe

---

1. The disposition of the charges against the three co-defendants is an interesting contrast. Defendant Custodia pleaded guilty to count three on August 20, 1968 and was sentenced to six years imprisonment.

   Defendants Rosa and Gonzalez went to trial on all six counts on August 26, 1968. The jury on August 30, 1968, acquitted Gonzalez on all charges and found Rosa guilty of all charges. On October 29, 1968, the same day Liguori was sentenced, Rosa was sentenced to eight years on each of the first five counts to run concurrently, and three years on count number six to run consecutively with counts one, two and four.

   Rosa appealed his conviction to this court. While his appeal was pending, the Supreme Court decided *Leary*. Rosa's brief on appeal for the first time asserted the privilege against self-incrimination as a bar to his conviction under the tax counts (three and four), and challenged his convictions on the remaining counts since they were based on the presumption of 21 U.S.C. § 176a which was held unconstitutional in *Leary*.

   The Assistant United States Attorney stipulated that Rosa's case should be remanded to the district court in accord with the *Leary* decision and this court ordered the remand. United States v. Rosa, Docket No. 33176 (2d Cir. September 10, 1969). On remand the government simply consented to the dismissal of the entire indictment which was ordered by Judge Weinstein of the District Court for the Eastern District of New York on November 14, 1969. As to the counts based on 21 U.S.C. § 176a, *Leary's* invalidation of

that section's presumption would seem only to require a new trial, not the dismissal of the indictment. See note 3, *infra*.

2. Similarly, under *Marchetti*, punishment for failing to file and pay gambling taxes might be sustained against a defendant from a state where gambling is not prohibited whose compliance with the statute would not subject the defendant to a substantial risk of self-incrimination.

   In addition, an accused charged on several counts including concealing marihuana under 21 U.S.C. § 176a and acquiring marihuana without paying the transfer tax under 26 U.S.C. § 4744(a) may be offered a plea bargain under which he could plead guilty to the tax count alone. Since section 4744(a) carries a lower range of possible sentences, and since first offenders under section 4744(a) are not ineligible for parole and probation as are first offenders under section 176a, see 26 U.S.C. § 7237, such an accused may knowingly and expressly waive his defense of the privilege against self-incrimination to the section 4744(a) count in order to limit his conviction to this count and thereby minimize the possible severity of his punishment.

   Finally, as suggested by the Court in *Leary*, if the accused's failure to pay the transfer tax was not at all motivated by his fear of possible incrimination, then *Leary* may be no bar to his prosecution under 26 U.S.C. § 4744(a). Leary v. United States, 395 U.S. 6, 28–29, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

the effect of the Supreme Court decision [in *Leary*] is to prevent enforcement of the [provisions of the Marihuana Tax Act, 26 U.S.C. § 4744(a)] as they are now designed because of the 'substantiality of the risks of incrimination.'" United States v. Manfredonia, 391 F.2d 229, 230 (2d Cir. 1968) (discussing the effect of *Marchetti* and *Grosso*).

In the present case we must decide whether *Leary* should be given retroactive effect to defendants whose convictions have become final before the Supreme Court rendered that decision, May 19, 1969, and whether appellant here has waived his defense based on the privilege by pleading guilty, or has raised his defense in an untimely fashion.

## I. RETROACTIVITY

This court has not yet considered whether to give retroactive effect to *Leary,* as applied to convictions which were final before that decision, or to the analogous decisions in *Marchetti, Grosso* and *Haynes, supra.* See Desimone v. United States, 423 F.2d 576, 577 (2d Cir. 1970) (specifically avoiding the question of the retroactivity of *Haynes*; Judge Bonsal, dissenting, said he would apply *Haynes* retroactively). Only four other circuits have addressed the problem of the retroactivity of *Leary.* Ramseur v. United States, 425 F.2d 413 (6 Cir. 1970) (holding *Leary* is mostly prospective); Santos v. United States, 417 F.2d 340 (7 Cir. 1969) (holding *Leary* is retroactive), vacated on other grounds, 397 U.S. 46, 90 S.Ct. 811, 25 L.Ed.2d 36 (1970); United States v. Scardino, 414 F.2d 925 (5 Cir. 1969) (assuming that *Leary* is not retroactive, nevertheless held that *Leary* applied to Scardino since his sentence had not been finally ordered); Rowell v. United States, 415 F.2d 300 (8 Cir. 1969) (holding *Leary* is retroactive), remanded on other grounds, 397 U.S. 662, 90 S.Ct. 1407, 25 L.Ed.2d 642 (April 27, 1970). See Miller v. United States, 311 F.Supp. 705, 709–711 (N. D.Ohio 1970) (holding *Leary* is retroactive); United States v. King, 307 F.

Supp. 217 (S.D.Cal.1969) (dictum that *Leary* is retroactive); contra, Barrett v. United States, 300 F.Supp. 1060, 1062 (D.Minn.1969) (*Leary* is not retroactive).

On the analogous question of the retroactivity of *Marchetti, Grosso* and *Haynes,* the other circuits are divided, all but one holding in favor of retroactivity. Meadows v. United States, 420 F.2d 795 (9 Cir. 1969) (*Haynes* retroactive), petition for certiorari filed, 38 U.S.L.W. 3391 (February 20, 1970); United States v. Lucia, 416 F.2d 920 (5 Cir. 1969) (*Marchetti* retroactive); United States v. Miller, 406 F.2d 1100 (4 Cir. 1969) (*Haynes* retroactive); Graham v. United States, 407 F.2d 1313 (6 Cir. 1969) (*Marchetti* not retroactive). See Horton v. United States, 300 F.Supp. 1332 (D.Conn.1969); Stoney v. United States, 302 F.Supp. 145 (E.D.Mo.1968); Desimone v. United States, 303 F.Supp. 406 (D.Conn.1968) (alternate holding), affirmed on other grounds, 423 F.2d 576 (2d Cir. 1970), all holding that *Haynes* is not retroactive. Cf. Forgett v. United States, 390 U.S. 203, 88 S.Ct. 898, 19 L.Ed.2d 1033 (1968); Deckard v. United States, 381 F.2d 77 (8 Cir. 1967) (Blackmun, C.J.).

The Supreme Court has established three criteria for deciding which new constitutional rules should be given only prospective effect: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967). The most important of the criteria is the purpose of the new constitutional rule, Desist v. United States, 394 U.S. 244, 249, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). In addition, if the new rule affects "the very integrity of the fact-finding process" then it should be given retroactive effect. See Linkletter v. Walker, 381 U.S. 618, 638–639, 85 S.Ct. 1731, 1742, 14 L.Ed. 2d 601 (1965).

Under this test, we conclude that the portion of *Leary* holding that the privilege against self-incrimination is a complete defense to a prosecution under section 4744(a) should be given retroactive effect. The purpose of the rule announced in *Leary* is to safeguard the fifth amendment privilege against self-incrimination. In the context of the Marihuana Tax Act which requires payment of the transfer tax upon acquisition of marihuana, the privilege is "the right not to be criminally liable for one's previous failure to obey a statute which required an incriminatory act." Leary v. United States, 395 U.S. 6, 28, 89 S.Ct. 1532, 1543, 23 L.Ed.2d 57 (1969). This purpose of the rule, therefore, cannot be furthered by the continued punishment of persons who were convicted prior to the *Leary* decision for failing to comply with the statute which required an incriminatory act. See United States v. Lucia, 416 F.2d 920, 925 (5 Cir. 1969).

Indeed, the purpose of protecting the privilege against self-incrimination, by prohibiting punishment for refusing to incriminate oneself, is served by retroactive application of *Leary* to terminate present punishment for a past refusal. We are not faced here with a rule whose purpose is to deter future conduct by law enforcement officials, which purpose is not furthered by retroactive application. Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); see Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).

Nor is any justified reliance by law enforcement officials or prosecutors upset by retroactive application of *Leary*. This is not an instance where the conduct of pre-trial proceedings and investigations or prosecutorial trial tactics would have been different had the *Leary* rule been in effect at the time. See, e.g., Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). Had the *Leary* rule been in effect, there could have been no prosecution of Liguori for the crime with which he was charged. Thus the government could not have obtained the conviction of Liguori by modifying its pre-trial activities, the evidence it presented at trial, or its summation, or by requesting a different charge to the jury. Thus, although the government did rely on its ability to obtain a valid conviction under section 4744(a), it did not rely to its detriment. Even if the *Leary* rule had been known at the time, the government would have been in no better position to convict Liguori than it is now; a timely assertion of the privilege would have prevented any prosecution.

Similarly, the retroactive application of *Leary* will not have the adverse effect on the administration of justice which was avoided in such cases as Johnson v. New Jersey and Linkletter v. Walker, *supra*. Since retroactive application of *Leary* will completely bar any further prosecution, the government will not be burdened with the dilemma of either retrying large numbers of guilty persons with aged or dissipated evidence or permitting the release of such persons when there is a governmental interest in their continued punishment. Meadows v. United States, 420 F.2d 795, 799 (9 Cir. 1969), petition for certiorari filed, 38 U.S.L.W. 3391 (February 20, 1970); see Miller v. United States, 311 F.Supp. 705, 710 (N.D.Ohio 1970). The rule announced in *Leary* vitiates any governmental interest in the continued punishment of persons in violation of their fifth amendment privilege against self-incrimination. See United States v. Lucia, 416 F.2d 920, 926 (5 Cir. 1969); United States v. Miller, 406 F.2d 1100, 1104 (4 Cir. 1969).

To be sure, the rule announced in *Leary* does not go to "the very integrity of the fact-finding process," Linkletter v. Walker, *supra*, 381 U.S. at 638–639, 85 S.Ct. at 1742, but it affects a decision

more fundamental than the fact-finding process—whether the government may punish a man under this statute, even if the facts reliably establish a violation. See United States v. Lucia, 416 F.2d 920, 926 (5 Cir. 1969).

We are not, therefore, convinced by the reasoning in Graham v. United States, 407 F.2d 1313 (6 Cir. 1969). We decline to follow Ramseur v. United States, 425 F.2d 413 (6 Cir. 1970), and we hold that the portion of *Leary* dealing with the privilege against self-incrimination should be given retroactive effect. Compare, United States v. Jenkins, 427 F.2d 149 (2d Cir. 1970) (presumed that invalidity of presumption of importation is retroactive); United States v. Scott, 425 F.2d 55 (9 Cir. 1970) (en banc) (portion of *Leary* dealing with the presumption of importation is retroactive); accord, Rivas v. United States, 315 F.Supp. 972 (S.D.N.Y. March 19, 1970), appeal docketed, Docket No. 34834 (2d Cir. May 25, 1970). Cf. United States v. Sorenson, 308 F.Supp. 1268 (E.D.N.Y. January 27, 1970).

## II.  TIMELINESS AND WAIVER

■  The Court in *Leary*, as in *Marchetti, Grosso* and *Haynes*, held that in order for the privilege to be a complete defense to prosecution under section 4744 (a) it must be asserted in a timely fashion and it must not be waived. 395 U.S. at 27, 89 S.Ct. 1532; United States v. Covington, 395 U.S. 57, 59, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969). We consider first whether Liguori's assertion of the privilege was timely.

■  At the time Liguori pleaded guilty, August 19, 1968, only two courts had considered whether *Marchetti, Grosso* and *Haynes* (decided on January 29, 1968) would permit prosecutions under section 4744(a) over an assertion of the privilege against self-incrimination. Leary v. United States, 392 F.2d 220 (5th Cir. 1968) (en banc) (privilege is no defense), cert. granted, June 10, 1968, 392 U.S. 903, 88 S.Ct. 2058, 20 L.Ed.2d 1362; United States v. Covington, 282 F.Supp. 886 (S.D. Ohio March 27, 1968) (privilege is a defense). Under these circumstances Liguori cannot be faulted for failing to anticipate the action of the Supreme Court. Otey v. United States, 135 U.S. App.D.C. 142, 417 F.2d 559, 561 (1969); Rowell v. United States, 415 F.2d 300 (8 Cir. 1969), remanded on other grounds, 397 U.S. 662, 90 S.Ct. 1407, 25 L.Ed.2d 642 (April 27, 1970); Santos v. United States, 417 F.2d 340, 345 (7 Cir. 1969), vacated on other grounds, 397 U.S. 46, 90 S.Ct. 811, 25 L.Ed.2d 36 (1970);  see United States v. Lopez, 414 F.2d 272, 273 (2d Cir. 1969) (per curiam);  Meadows v. United States, *supra;* United States v. Lucia, *supra;* United States v. Miller, *supra;* but see Sepulveda v. United States, 415 F.2d 321 (10 Cir. 1969);  United States v. Carlisle, 303 F.Supp. 627 (W.D.Okl.1969);  cf. Stoney v. United States, 302 F.Supp. 145 (E.D.Mo.1968).

In Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) petitioner failed to assert at trial or before the Supreme Court the privilege as a defense to charges based on his failure to pay the occupational tax. Since the case law at the time had rejected such a defense, the Supreme Court held that his conviction on these charges should be reversed despite his total failure to assert the privilege. In similar circumstances, we have held that a plea of the privilege for the first time on appeal is timely when the trial took place prior to the Supreme Court's decision. United States v. Lopez, 414 F.2d 272, 273 (2d Cir. 1969) (per curiam);  United States v. Manfredonia, 391 F.2d 229 (2d Cir. 1968) (per curiam);  accord, United States v. Whitehead, 424 F.2d 446, 448 (6 Cir. 1970) (en banc);  Otey v. United States, 135 U.S.App.D.C. 142, 417 F.2d 559, 561 (1969);  Becton v. United States, 412 F.2d 1005, 1007 (8 Cir. 1969) (Blackmun, C. J.);  Shoffeitt v. United States, 403 F.2d 991 (5 Cir. 1968);  Drennon v. United States, 393 F.2d 342 (8 Cir. 1968). In *Leary* itself, petitioner first asserted the privilege after the completion of the trial on motion

for a new trial. And in Forgett v. United States, 390 U.S. 203, 88 S.Ct. 898, 19 L.Ed.2d 1033 (1968), the Supreme Court on petition for hearing, reversed its previous 1966 denial of a petition for certiorari, granted certiorari, and vacated judgment and remanded on the authority of *Haynes*. The successful defense based on *Haynes* was thus first asserted after certiorari had been denied.

It would seem that the Supreme Court's requirement that the privilege be timely asserted was primarily designed to insure that in future cases the accused will assert his defense of the privilege before time and resources are wasted on a trial. We cannot conclude that the purpose of the timeliness requirement would be served by holding that Liguori's assertion of the privilege was untimely, when at the time of his conviction, the *Leary* defense had not been established by the Supreme Court. Ramseur v. United States, 425 F.2d 413, at 415 (6 Cir. April 8, 1970); Miller v. United States, 311 F.Supp. 705, 708–709 (N.D.Ohio 1970). Liguori's motion for relief under section 2255 (on September 2, 1969) was filed within four months of the Supreme Court's decision in *Leary*.

Finally we must consider whether Liguori waived his privilege against self-incrimination by pleading guilty. The court below so held. Other courts considering the question, under *Leary,* or *Marchetti, Grosso,* or *Haynes, supra,* for the most part have found that a guilty plea is not a waiver of the privilege in cases of this nature. Meadows v. United States, *supra,* 420 F.2d at 797; United States v. Lucia, *supra,* 416 F.2d at 923; United States v. Miller, *supra,* 406 F.2d at 1105; Desimone v. United States, 423 F.2d 576, at 583 (2d Cir. May 1, 1970) (dissenting opinion); Miller v. United States, 311 F.Supp. 705, 709 (N.D.Ohio 1970); see United States v. Scardino, 414 F.2d 925, 927 (5 Cir. 1969) (dictum); United States v. King, 307 F.Supp. 217, 218 (S.D.Cal.1969) (dictum); contra, Eby v. United States, 415 F.2d 319 (10 Cir. 1969) (per curiam).

By pleading guilty here, Liguori admitted that he had failed to comply with the transfer tax provisions of section 4744(a). He thereby waived his right to trial and his privilege to remain silent as to whether he failed so to comply. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 1446, 25 L.Ed.2d 763 (May 4, 1970). But he did not intentionally relinquish his known right not to be punished for failing to comply with a statute which required him to incriminate himself. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). This is especially true since at the time he pleaded guilty, before the *Leary* decision, he could not have known that he possessed that right. See United States v. Whitehead, 424 F.2d 446, 448 (6 Cir. 1970) (en banc); Otey v. United States, 135 U.S.App.D.C. 142, 417 F.2d 559, 561 (1969).

Nor is this situation controlled by the recent decisions of the Supreme Court in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In those cases the Court held that a guilty plea is not involuntary if it is based on competent contemporary advice of counsel as to admissibility of a confession or as to the validity of a possible death sentence after conviction by a jury, even if subsequent Supreme Court decisions render the confession inadmissible or the possible death sentence invalid.

The Court in those cases relied heavily on the fact that when a petitioner pleaded guilty, he admitted in open court that he committed the charged crime. Moreover the Court felt that it would be too difficult to determine years later the magnitude of the effect of petitioner's fear of his confession or the death sentence on the petitioner's original decision to plead guilty. And the Court was apparently concerned with the burden on the states of having to permit reopening of countless guilty pleas to a variety of

charges which only became open to challenge due to subsequent changes in the law.

The instant case does not fall within those concerns. First of all, we are not considering here as in McMann v. Richardson, *supra, et al.*, whether Liguori's plea was voluntary. Liguori has not claimed that his plea was involuntary. Rather, we consider here whether Liguori when he pleaded guilty intended to waive his defense under *Leary* even before that decision was rendered. We think that he did not. See United States ·v. Lucia, 416 F.2d 920, 923 (5 Cir. 1969).

Second, although Liguori admitted in open court that he violated section 4744 (a), this does not, unlike in *Richardson, et al.*, establish that there is a governmental interest in his punishment. In this case, it is the statutory scheme imposing punishment for failing to incriminate oneself which violates the privilege against self-incrimination, so that even if the procedures leading to the conviction were correct the punishment here, unlike in *Richardson, et al.*, is unjustified.

Third, there is no difficulty now in determining whether Liguori would have pleaded guilty had the *Leary* rule been in effect at the time. Since *Leary* and the privilege would have provided a complete defense to prosecution, we are not

faced with an accused's decision to plead guilty based on difficult judgments as to the strength of the government's case and as to the possibility of leniency. McMann v. Richardson, *supra,* 90 S.Ct. at 1448. In this case Liguori certainly would not have pleaded guilty had he known of his right to assert the privilege as a complete defense.[3]

Finally, by permitting Liguori's defense founded on his privilege against self-incrimination, despite his plea of guilty, we do not jeopardize valid convictions on a wide variety of state and federal charges as was feared in McMann v. Richardson, *supra, et al.* Here we only permit the defense of privilege to be asserted by prisoners who pleaded guilty to a single federal offense, when the federal government has no valid interest in the continued punishment of those prisoners for that offense. See United States v. Miller, 406 F.2d 1100, 1104 (4 Cir. 1969).

### III. DISPOSITION

Since we have found that Liguori has timely asserted his privilege against self-incrimination and that he did not waive his privilege by pleading guilty prior to the *Leary* decision, we reverse the decision of the court below and remand with directions to vacate the judgment of conviction.[4] There is no ques-

3. The government does not contend here that Liguori pleaded guilty to count three to avoid the harsher minimum penalties on other counts, see note 2, *supra,* and would have been willing to so plead even if he had known of his complete defense under *Leary.* Such a contention would be unlikely in these circumstances since on the other counts the government apparently had to rely on the presumption of knowledge of importation under 21 U.S.C. § 176a in order to prove knowledge of importation. When this presumption was invalidated by *Leary,* the government consented to the dismissal of the indictment against co-defendant Rosa. See note 1, *supra.* Had the government been able to prove knowledge of importation without the use of the section 176a presumption, then it is unlikely that it would have consented to the dismissal of Rosa's case when it could have obtained his conviction in a new trial.

So had *Leary* been decided prior to Liguori's guilty plea, Liguori would not have pleaded guilty to any count.

4. As the concurring opinion suggests, the government may seek to reindict Liguori on the five counts of the previous indictment which were dismissed after he pleaded to the tax count. Whether reindictment would be barred by the double jeopardy clause or by estoppel effects arising from the apparent plea bargain need not be considered at this time, particularly in view of the conflict in authority. Compare, United States v. Tateo, 216 F.Supp. 850, 852 (S.D.N.Y.1963) (kidnapping count), rev'd on other grounds, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); United States v. Paiva, 294 F. Supp. 742, 745–748 (D.D.C.1969), with United States v. Potishman, 230 F.2d 271, 273–274 (5 Cir.), cert. denied, 351 U.S.

tion here that "possession of marihuana was illegal under [New York] law, and that [Liguori] would have run a substantial risk of incrimination had he complied with the Act. We conclude that there is no possibility of any factual dispute with regard to the hazard of incrimination." United States v. Covington, 395 U.S. 57, 61, 89 S.Ct. 1559, 1561, 23 L. Ed.2d 94 (1969).

Reversed and remanded. Mandate may issue forthwith.

LUMBARD, Chief Judge (concurring):

Although I concur in the majority opinion and agree with the result reached, see United States v. Lopez, 414 F.2d 272 (2d Cir. 1969), the troublesome nature of this case prompts me to add several comments.

Liguori, together with Henry Rosa, Luis Custodio and Eli Samuel Gonzalez, was charged in a six count indictment with possession, sale, and distribution of marihuana and with conspiracy to do the same.[1] Liguori pleaded guilty to count three charging him with failure to pay the transfer tax on 52 lbs. of marihuana, in violation of 26 U.S.C. § 4744(a), under which the penalties are not less than two to not more than ten years, a fine up to $20,000, and the possibility of probation

after serving the minimum two years. Liguori was also charged with four counts of selling and distributing marihuana in violation of 21 U.S.C. § 176a, the penalties for which are not less than five years to not more than twenty years, a fine of $20,000, and no eligibility for probation until the minimum five years has been served. See 26 U.S.C. § 7237. The four counts charging violations of § 176a, counts one, two, four and six, as well as an additional count charging a further violation of § 4744(a), count five, were dismissed after the guilty plea to count three was taken. As a consequence, Liguori actually received a three year sentence on count three, which is significantly less than if he had been convicted on any one of counts one, two, four or six, which carried the mandatory minimum sentence of five years without eligibility for probation until the five years had been served.

Relying on Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), Liguori now attempts to have his conviction after a guilty plea reversed. I would have little hesitation in arriving at the result we reach today if Leary, supra, had simply declared 26 U.S.C. § 4744(a) to be unconstitutional, in which case Liguori would have entered a plea to a count which did not charge

918, 76 S.Ct. 712, 100 L.Ed. 1451 (1956); District of Columbia v. Buckley, 75 U.S. App.D.C. 301, 128 F.2d 17, 20 (1942); Buie v. United States, 76 F.2d 848, 849 (5 Cir.), cert. denied, 296 U.S. 585, 56 S.Ct. 97, 80 L.Ed. 414 (1935). Cf. Note, Double Jeopardy: The Reprosecution Problem, 78 Harv.L.Rev. 1272, 1275–76 (1964); Klopfer v. State of North Carolina, 386 U.S. 213, 219–220 & n. 5, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); United States v. Ford, 99 U.S. 594, 601, 25 L.Ed. 399 (1878); White v. United States, 126 U.S.App.D.C. 309, 377 F.2d 948, 949 (1967); Mann v. United States, 113 U.S. App.D.C. 27, 304 F.2d 394, 397, cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed. 2d 127 (1962); Robinson v. United States, 284 F.2d 775, 776–777 (5 Cir. 1960).

1. Liguori was indicted on six counts:
   (1) on or about January 26, 1966, receiving, concealing and facilitating the transportation of 23.361 kilograms (approx. 52 lbs.) of marihuana, in violation of 21 U.S.C. § 176a;
   (2) on or about January 26, 1966, selling 23.361 kilograms of marihuana, in violation of 21 U.S.C. § 176a;
   (3) on or about January 26, 1966, obtaining 23.361 kilograms of marihuana without paying the transfer tax, in violation of 26 U.S.C. § 4744(a);
   (4) on or about January 26, 1966, concealing 2.949 kilograms (approx. 6½ lbs.) of marihuana, in violation of 21 U.S.C. § 176a;
   (5) on or about January 26, 1966, obtaining 2.949 kilograms of marihuana without paying the transfer tax in violation of 26 U.S.C. § 4744(a);
   (6) on or about January 24 and 26, 1966, conspiring to do the above, in violation of 21 U.S.C. § 176a.

a crime. Although the statute has been significantly emasculated, it is not completely void. As the majority notes, a corporation could still be convicted under the statute, and the privilege can be knowingly and intelligently waived. As a result, Section 4744(a) retains a certain value in a plea bargaining situation. See footnote 2, majority opinion. It is this point regarding plea arrangement that I find most troublesome.

There can be no doubt that a bargain was reached in this case and that Liguori, by pleading to count three and securing the dismissal of all the other counts, benefited greatly from the arrangement. That he can now assert the benefit of his bargain and avoid entirely the reciprocal burden was certainly not within the contemplation of the court or the parties.

In such a situation there appears to be every reason to permit the government either to re-indict Liguori on the other counts, or to move in the district court to vacate the dismissal of the other counts. If the government elects to continue with the prosecution of Liguori it must do so promptly, as the acts charged occurred more than four years ago and the running of the statute of limitations will soon become a bar to any further prosecution. In the event the government does continue the prosecution, I do not think that the defense of double jeopardy will be a bar. See United States v. Chase, 372 F.2d 453 (4th Cir. 1967); Robinson v. United States, 284 F.2d 775 (5th Cir. 1960); Hensley v. United States, 82 U.S.App.D.C. 14, 160 F.2d 257, cert. denied, 331 U.S. 817, 67 S.Ct. 1305, 91 L.Ed. 1835 (1947).

The majority assumes in footnote 3 that the charges against Liguori cannot be proved because the charges against a co-defendant were dismissed with the consent of the government after *Leary*, *supra*. It does not follow, however, that the evidence against Liguori is insufficient to make out a case on one or more of the five counts which were dismissed. Based on the overt acts alleged in the conspiracy count of the indictment, Li-

guori may well have been the ringleader of the entire operation. He is alleged to have made two different telephone calls to buyers and on another occasion he allegedly met with two buyers to negotiate the terms of delivery and sale of the marihuana. None of the other defendants is alleged to have made any telephone calls and their participation in the scheme seems to have been less central than Liguori's. These factors would seem to be a strong indication that Liguori had actual knowledge of the source of the marihuana he was distributing. In any event, the mere fact that the charges were dropped against a co-defendant is in no way indicative of the quantum of proof that may exist against Liguori.

The purpose of a guilty plea is to resolve and settle issues with finality, and only in exceptional circumstances will the disposition after a guilty plea be subject to review on appeal. A defendant is still bound by his guilty plea and conviction even though he might have pleaded differently had later decided cases then been the law. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (May 4, 1970). In Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (May 4, 1970) the Court further indicated that

"[A]bsent misrepresentation or other impermissible conduct by state agents, cf. Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." 90 S.Ct. at 1473.

The Court continued, saying

"We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought. * * *" 90 S.Ct. at 1474.

In Liguori's case however, the development is not merely that the government would have a weaker case against him, but that it would have no case against him. As is pointed out in the majority opinion, the government no longer has any proper interest in punishing Liguori for his failure to incriminate himself. Such reasoning does not apply to the serious charges brought against Liguori under 21 U.S.C. § 176a. The government has every legitimate and proper interest in punishing those who on a commercial scale distribute and sell narcotics, knowing the same to have been imported.