KORMAN, District Judge,
concurring:
I concur in the affirmance of the judgment of conviction without reaching the merits of Garcia-Cordero’s self-incrimination claim. I do so for the following reasons. Title 8 U.S.C. § 1324(a)(2) makes it a misdemeanor to bring in or attempt to bring in any unauthorized alien “knowing or in reckless disregard of the fact that [the] alien has not received prior official authorization to come to, enter, or reside in the United States.” § 1324(a)(2). The statute, which was enacted in 1986, has its genesis in the early 1980s when the government obtained 84 indictments charging more than 300 defendants with “bringing] into” the United States any alien “not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States.” 8 U.S.C. § 1324(a)(1) (1976), amended by 8 U.S.C. §§ 1324(a)(1) & 1324(a)(2) (1986).
The defendants in those cases were part of what was then described as the “Freedom Flotilla.” They carried more than 125,000 undocumented Cuban nationals to the United States and presented them to INS officials at West Key, Florida, so that the aliens could apply for political asylum. See United States v. Nguyen, 73 F.3d 887, 891 (9th Cir.1995). In United States v. Zayas-Morales, 685 F.2d 1272 (11th Cir. 1982), we held that the boat owners and crew members could not be prosecuted for willfully and knowingly transporting these undocumented Cuban nationals, because they lacked general criminal intent, i.e. the intent to commit an illegal act, id. at 1277-78. As the House Judiciary Committee Report explained, “[o]f crucial significance was the fact that the defendants in the case made no effort to land any undocumented Cubans surreptitiously or evasively, but instead brought them directly to immigration officers in Key West.” H.R.Rep. No. 99-682(1), at 66 (1986), reprinted in 1986 U.S.C.C.A.N. 5649, 5670.
The House Judiciary Committee Report reflects the concern that, “[without the threat of criminal prosecution, there is no effective way to deter potential transporters from inundating U.S. ports of entry with undocumented aliens.” Id. As the Report explained, “[a]s happened during the Mariel episode, the United States would be forced to expend extraordinary amounts of money and human resources in processing, monitoring, caring for and giving hearings to exorbitant numbers of people.” Id. Consequently, Congress enacted 8 U.S.C. § 1324(a)(2), which does not require general criminal intent, to make it a misdemeanor to engage in conduct of the kind at issue in the Mariel “Freedom Flotilla” cases. Thus, the statute was intended to reach defendants who, like those in the Mariel cases, had no intention of smuggling aliens into the United States, but who nevertheless forced the expenditure of extraordinary resources by knowingly bringing unauthorized aliens into the country and to a designated port of entry for processing.
On the other hand, 8 U.S.C. § 1324(a)(2) provided for an enhanced five-year mandatory minimum sentence for those defendants who were engaged in smuggling defendants into the United States by not presenting unauthorized aliens to an immigration officer at a designated port of en *620 try. See § 1324(a)(2)(B)(iii). Read in context, the purpose of the enhanced sentence was not to enforce compliance with the presentment requirement or punish those who failed to do so. Instead, it was intended to deter the smuggling of aliens into the United States and to punish those who engaged in that activity.
Garcia-Cordero falls within this category of defendants who had no intention of presenting the aliens they were smuggling into the country to an immigration officer at a designated port of entry. Nevertheless, he argues that because compliance with the “bring and present” requirement would have incriminated him, his sentence cannot be enhanced for his failure to do so. In essence, his argument is that he is being punished for asserting the privilege against self-incrimination and that this renders the enhancement unconstitutional as applied to him.
This argument is wholly without merit because Gareia-Cordero’s failure to comply with the “bring and present” requirement was not based on his fear of self-incrimination, as opposed to his desire to consummate a crime he was in the mist of committing. Briefly, the record shows that on August 12, 2008, Garcia-Cordero left Ft. Myers, Florida aboard a 33-foot motor vessel, headed for Western Cuba. There, on the morning of August 13, 2008, 35 Cuban nationals boarded the boat which departed for Loggerhead Key, Florida, where Garcia-Cordero intended to smuggle the aliens into the United States. As the boat approached shore, it attracted the attention of the United States Coast Guard patrol. The patrol responded to the scene and observed the passengers jumping from the vessel and taking cover as they reached shore. Ultimately, the passengers were rounded up and Garcia-Cordero was arrested.
On this record, it is obvious that GarciaCordero was carrying out a scheme to smuggle aliens into the United States. He never had any intention to comply with the “bring and present” requirement because such compliance would have wholly defeated the purpose of the criminal activity in which he was engaged. Indeed, as previously observed, in United States v. Zayas-Morales we held that compliance with such a requirement was inconsistent with the mens rea required to convict a defendant of bringing unauthorized aliens into the United States under the former version of 8 U.S.C. § 1324(a)(1). See Zayas-Morales, 685 F.2d at 1277-78.
Unlike other cases, in which it is clear that fear of self-incrimination constituted a basis for a defendant’s failure to comply with a disclosure requirement, see, e.g., Marchetti v. United States, 390 U.S. 39, 52, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), or where the defendant actually testified that his failure was motivated by “an apprehension that ... he might incriminate himself,” Leary v. United States, 395 U.S. at 24, 29, 89 S.Ct. 1532 (1969), common sense suggests that this was not the case here. Indeed, Garcia-Cordero concedes that he did not argue below, nor does he argue here, that it was his fear of self-incrimination that accounted for his failure to comply with the “bring and present” requirement. Cf. United States v. Liguori, 430 F.2d 842, 844 n. 2 (2d Cir.1970) (“[I]f the accused’s failure to pay the transfer tax was not at all motivated by his fear of possible incrimination, then [the privilege] may be no bar to his prosecution.”). Under these circumstances, Garcia-Cordero’s challenge to the statute as unconstitutional as applied to him is nothing more than a disguised facial challenge which violates “the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be *621 applied unconstitutionally to others, in other situations not before the Court.” Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).
The case would be otherwise if GarciaCordero had actually complied with the “bring and present” requirement and he was being prosecuted based on evidence allegedly obtained as a result of such compliance. See Baltimore City Dep’t of Soc. Servs. v. Bouknight, 493 U.S. 549, 554-56, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990) (suggesting that “limitations may exist upon the State’s ability to use the testimonial aspects” of an act of compelled production). If that were the case, he might have standing to argue that the statute was unconstitutional as applied to him. Because such a far-fetched scenario is not present here, there is no need to address the merits of such a claim.