IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-74,228






Ex parte LaROYCE LATHAIR SMITH, Applicant








ON REMAND FROM


THE SUPREME COURT OF THE UNITED STATES

ON APPLICATION FOR A WRIT OF HABEAS CORPUS

DALLAS COUNTY





Holcomb, J., filed a dissenting opinion.


O P I N I O N 


 I respectfully dissent. The majority misapprehends the plain directive of the United
States Supreme Court in its reversal of this court: precisely, apply a harm analysis to Eighth
Amendment error because "the nullification instruction was constitutionally inadequate under
Penry II", effectively preventing the jury from giving full effect to Smith's relevant
mitigating evidence. (1) Smith v. Texas, 543 U.S. 37, 48-49 (2004) (per curiam). With the
following comments, I dissent from the denial of habeas corpus relief.

Procedural Default

 Although I was once persuaded to believe otherwise, Smith's federal constitutional
claim that he was denied an effective vehicle by which a jury could consider and give effect
to his mitigating evidence was not procedurally defaulted. See Ex parte Smith, 132 S.W.3d
407, 428 (Tex. Crim. App. 2004) (Holcomb, J., concurring and dissenting). The majority
appears to hold that, although Smith presented three written pre-trial motions upon his Eighth
Amendment objection, his objection lacked the requisite specificity under our state-law error
preservation rules, and therefore, his claim was procedurally defaulted. See Maj. op. supra
at 12 & n.9. And despite the fact that Penry II had yet to be decided, the majority holds that
Smith's failure to object under the precise reasoning of Penry II is now fatal to his
constitutional claim. Maj. op. supra at 12. Specifically, the majority faults Smith for arguing
only that the applicable statute was unconstitutional as applied under Penry I (2), and thus, his
failure to further object to the verbal nullification instruction, when invited to do so by the
trial court, waived his Penry II claim. See Maj. op. supra at 12 & n.9.

 It should go without saying that a defendant does not waive his right to assert a
constitutional violation by failing to object at trial if, at the time of his trial, that right had not
been recognized. Ex Parte Taylor, 484 S.W.2d 748, 752 (Tex. Crim. App. 1972) (citing and
explaining United States v. Liguori, 430 F.2d 842, 847 (2d Cir. 1970)). Because Penry II had
not been decided by the Supreme Court at the time of Smith's trial, it would have been a
superhuman feat indeed to specifically object that the verbal nullification instruction itself

was inadequate to remedy the Penry I problem in his case and why (that the nullification
instruction creates a situation whereby jurors would face an intractable ethical dilemma). (3)
 
Smith should not be faulted for failing to anticipate the action of the United States Supreme
Court. See Liguori, 430 F.2d at 847. Thus, the majority's reasoning that Smith did not
preserve error cannot be countenanced, and further, it is not supported by the record. 

 The record reflects that Smith brought the Eighth Amendment error to the attention
of the trial court, that the trial court understood his objections, and his objections were made
with the requisite specificity to preserve error under Texas Rule of Appellate Procedure. 33.1
and the cases construing it. For example, in two pre-trial motions, Smith argued that:


 the Texas death penalty "statutory scheme may become unconstitutional as applied
if the defendant offers mitigating evidence about his background or character or the
circumstances of the crime that are not relevant to the special verdict questions or
have relevance to the Defendant's moral culpability beyond the scope of the special
verdicts" (citing Penry I) (Clerk's Record at 73-74);




 "Tex. Code Crim. Proc. is Ann. Art. 37.071 is unconstitutional because it does not
provide for the introduction and subsequent use by the jury of mitigating evidence
which is not relevant or material to the special issues. There is no provision in Texas
for the jury to decide the appropriateness of the death penalty taking into
consideration the personal moral culpability of the Defendant balanced by mitigating
evidence which is not directly or circumstantially probative in answering the special
issues. There is no provision in the current statutory scheme for the jury to render its
verdict that the death penalty should not be inflicted because of mitigating evidence
of this type." (Clerk's Record at 80).



 The majority unfairly characterizes Smith's arguments as broad-based objections to
the statutory scheme and the court's charge that no possible instruction could cure, and faults
Smith for failing to offer suggestions to the trial court about how, in his view, the
nullification instruction should be worded. To say the least, however, the state of the law
concerning the special issues was in disarray at the time of trial, and the arguments Smith
made pertaining to the special issues were clearly sufficient to apprise the trial court of his
federal constitutional claim under Penry I. In declaring otherwise, the majority is merely
splitting hairs to avoid applying the proper beyond-a-reasonable-doubt standard (4) to his
meritorious federal claim. See Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App.
1992) ("no technical considerations or form of words" are required to preserve error for
review, and straightforward communication in plain English will always suffice if it lets the
trial judge know what the party wants and why he thinks himself entitled to it); Tex. R. App.
P. 33.1. Whatever we require of lawyers in Texas with respect to the rules of error
preservation, we should not hold that they must be clairvoyant. See Liguori, 430 F.2d at 847. 
Because Penry II had not been decided and there was no enactment by the Legislature in
response to Penry I, this is exactly what the majority requires from this lawyer. The record
reflects that counsel went above and beyond what was required of him to preserve error
under Tex. R. App. P. 33.1 and Tex. Code Crim. Proc. Ann. art. 36.14. (5)

 I also find compelling Smith's argument in reply to the State's new position that Smith
did not preserve error. That is, if Smith had offered particular wording or a proposed charge
on mitigation, and that instruction was later declared to be inadequate under the yet-to-be-decided Penry II case, Smith would have invited the error and no relief could have been
subsequently granted to him because of his acquiescence to the error. See Applicant's Reply
Brief on Remand at 3 n.*; (Reporter's Record Vol VI at 3-4). It is puzzling to me that the
majority thinks the better course for trial counsel was, in this unique and difficult situation,
to create an estoppel-type-invited-error problem himself by suggesting, at the invitation of
the trial court, further changes to the nullification instruction. See also Tex. Code Crim.
Proc. Ann. art. 36.14. (6)

 Moreover, as this exchange reflects, the trial court understood Smith's motions as a
request for a sufficient mechanism to allow the jury to consider and give effect to his
mitigating evidence. 

The Court: The two motions to declare Texas Code of Criminal Procedure
Annotated, Article 37.071, Section 3701 unconstitutional as applied, I
read those and . . . put them in my mind together. Is there anything not
included in those two motions that you wish to supplement orally?

Trial Counsel: No, Your Honor.

Trial Court: Those will have to be denied.

 Smith further explained the potential for error in his Motion to Reveal Mitigation
Charge, "[s]ince . . . Penry the Texas Legislature has met in several sessions but has failed
to address the problems and issues created by the decision . . . [and the] Court of Criminal
Appeals has had numerous opportunities to address the problem raised in Penry and has
failed to do so in any written opinion." (Clerk's Record 87-88). Thus, the record clearly
reflects that Smith's arguments before the trial court, if not explicitly stating that the
nullification instruction was an inadequate remedy to cure his Penry I complaint, they were
precise enough to put the trial court on notice, particularly since there was no statute or case
law to look to for guidance. See Taylor v. State, 939 S.W.2d 148, 154-55 (Tex. Crim. App.
1996) (grounds of objection, while imprecise, were apparent from the context). The
majority's reasoning to the contrary, utilizes an arbitrary and unfair "hair-splitting analysis"
to bar consideration of Smith's claim on the merits. See Lankston, 827 S.W.2d at 909, 911
(concluding that it was clear from context that both judge and prosecutor understood the
defendant's objection).

 Our state preservation of error laws may not be applied to avoid addressing
substantive claims in violation of federal law. See, e.g., Washington v. Texas, 388 U.S. 14,
22-23 (1967). Nor do I believe that this court may attempt to avoid reversal by cloaking
federal constitutional error or harm in purportedly "independent and adequate state law
grounds." See Concurring op. supra at 1-2; cf. Kunkle v. Texas, 543 U.S. 1039 (2004)
(Stevens, J., concurring) (noting that Supreme Court did not have jurisdiction to consider
Kunkle's Penry claim because it was barred under an independent and adequate state ground,
i.e., Tex. Code Crim. Proc. Ann., Art. 11.071, § 5). "Random or inconsistent application
of state rules of procedural default will not be regarded as 'adequate and independent state
law grounds' so as to bar decision in federal habeas review." Ex parte Gardner, 959 S.W.2d
189, 193 (Tex. Crim. App. 1996) (Clinton, J., dissenting) (citing Johnson v. Mississippi,
486 U.S. 578, 587 (1988)). Thus, contrary to the concurring judge's reasoning, see
Concurring op. supra at 1-2, we cannot avoid federal review by now holding that Smith did
not preserve error because "the question of when and how defaults in compliance with state
procedural rules can preclude [federal court's] consideration of a federal question is itself a
federal question." See Henry v. Mississippi, 379 U.S. 443, 447 (1965). 

 Furthermore, a state procedural ground is not adequate unless the procedural rule is
strictly or regularly followed. Barr v. City of Columbia, 378 U.S. 146, 149 (1964). Barr is
instructive on this point. In Barr, the Supreme Court declined the invitation to hold that
Petitioners did not preserve error on their constitutional claims because the state supreme
court "refused to pass on objections" as "the exceptions taken below were 'too general to be
considered[.]'" Id. In reaching its decision that it was not barred from reviewing the state
court's decision, the Court considered the state court's recent treatment of similar cases. See
id. at 149-50. Finding that the state court had addressed the merits in five cases, where either
identical or similar objections were made below, the Supreme Court concluded it was not
prohibited from reviewing the claims on the merits. See id. 

 Our application of error preservation rules, as of late, have been applied capriciously
and arbitrarily by this court; (7) therefore, a self-proclaimed "adequate" procedural bar cannot
insulate the majority's holding from federal review. See Henry v. Mississippi, 379 U.S. at
447; Barr v. City of Columbia, 378 U.S. at 149. It appears to me that this court has been (and
clearly is in this case) improperly applying procedural bars to avoid granting substantive
relief to defendants who are perhaps guilty but are otherwise entitled to the relief sought. 
The rule of procedural default should not be used as an ad hoc mechanism to avoid reaching
the merits of a particular case. 

 And perhaps more significantly, this Court has already addressed the merits of Smith's
claim twice: once on direct appeal, LaRoyce Lathair Smith v. Texas, No. 71,333 *10-11 (Tex.
Crim. App. 1994) (not designated for publication), and also in our initial resolution of this
very case. See Ex parte Smith, 132 S.W.3d at 416 (declining to impose procedural bar and
addressing merits of Smith's claim); see also Maj. op. supra at 12 & n.10 ("We rejected
[Smith's direct appeal] claim and held that . . . the trial judge's supplemental instruction
provided a sufficient vehicle for the jury to fully consider all of that evidence"); see
Applicant's Reply Brief at 2 n.* (noting that the State has taken mutually exclusive positions
throughout the case regarding error preservation). Because our holding was reversed by a
higher court, a court which addressed the merits and found our holding on the merits to be
erroneous, we may not now remedy the problem by failing to address the merits, and instead,
decide that the substantive complaint was not preserved. See United States v. Wells, 519 U.S.
482, 487-88 (1997) (acknowledging law of the case doctrine); Granviel v. State, 723 S.W.2d
141, 147 (Tex. Crim. App. 1986) (same). 

Obiter Dicta to Support Harmless Error

 I disagree with the majority that it is arguable the Supreme Court did not "disapprove
of" this Court's alternative holding "that the two special issues provided applicant's jury with
a constitutionally sufficient vehicle to give effect to his mitigating evidence." See Maj. op.
supra at 2, 15. I believe the Supreme Court spoke quite clearly, holding, inter alia, that "just
as in Penry II . . . findings of deliberateness and future dangerousness . . . had little, if
anything, to do with the mitigation evidence [Smith] presented." See Smith v. Texas, 543
U.S. at 48. (8) Thus, there can be no reasonable conclusion that we were ordered to address
anew whether there was error. See Penry v. Johnson, 532 U.S. at 798 (Penry II) ("we made
clear in Penry I, none of the special issues is broad enough to provide a vehicle for the jury
to give mitigating effect to the evidence of Penry's mental retardation and childhood abuse");
Penry v. Johnson, 215 F.3d 504, 514 (Dennis, J., dissenting) (Penry's mitigating evidence
was shackled and confined within the scope of the three special issues). While our initial
conclusion may not have been expressly disavowed by the Supreme Court, it was implicitly
rejected. Reversed means reversed. Tennard v. Dretke, 542 U.S. 274 (2004).

 The majority's reasoning on the question of error is obiter dictum, and therefore, has
no precedential value. But it does serve the distinct purpose of allowing the majority to
weave into its harm analysis the disavowed conclusion that the two special issues submitted
sufficiently encompassed Smith's mitigating evidence. See Maj. op. supra at 29-30. 
However, our judicial power does not include the power to issue advisory opinions and
ignore orders from the Supreme Court. (9) Ex parte Ruiz, 750 S.W.2d 217, 218 (Tex. Crim.
App. 1988).

The Proper Harm Analysis

 Not only does the majority overstep its bounds by deciding a question it is not
authorized to consider, see id., it further commits error by applying a state-law
non-constitutional harm analysis to federal constitutional error. Specifically, because the
majority now suddenly thinks that Smith did not preserve error in the trial court--despite the
fact that the majority once rejected the procedural default argument and twice addressed his
claim on the merits, the majority applies our burdensome state-law "egregious harm" analysis
to Smith's Eight Amendment claim. See Maj. op. at 15-16; Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984).

 The majority's decision to apply our framework for unpreserved error in the jury
charge is wrong for at least two reasons. First, simply because the manifestation of Smith's
Eighth Amendment violation stemmed from the failure to include an instruction in a written
jury charge, that Eighth Amendment claim does not therefore become a lesser state-law claim
that we may dispose of under the less stringent standard of review for mere jury charge error. 
Beathard v. State, 767 S.W.2d at 432 (citing Chapman v. California, 386 U.S. 18, 21 (1967)
and explaining that the application of a state harmless-error rule is a state question when it
involves only errors of state procedure or state law); see also Jimenez v. State, 32 S.W.3d
233, 236-37 (Tex. Crim. App. 2000). Nor could we say, similarly, because the constitutional
error was created by an omission in the jury charge, the proper review would be that reserved
for non-constitutional errors. See Tex. R. App. P. 44.2(b) ("any [non-constitutional] error,
defect, irregularity, or variance that does not affect substantial rights must be disregarded.");
see also Almanza, 686 S.W.2d at 171-72 (unpreserved error in the jury charge is reviewed
for egregious harm). 

 Second, because the error was preserved, we should apply the harmless error standard
in Tex. R. App. P. 44.2(a). See Beathard v. State, 767 S.W.2d at 432 (noting that our
appellate procedure rule provides the same standard as the rule enunciated in Chapman v.
California, i.e., before federal constitutional error can be held harmless, the court must be
able to declare a belief that it was harmless beyond a reasonable doubt). Rule 44.2(a)
provides that "If the appellate record in a criminal case reveals constitutional error that is
subject to harmless error review, the court of appeals must reverse a judgment of conviction
or punishment unless the court determines beyond a reasonable doubt that the error did not
contribute to the conviction or punishment." Because the error here was a violation of the
federal constitution that did not amount to a structural defect, we must determine whether it
was harmless beyond a reasonable doubt. See Jimenez, 32 S.W.3d at 237. The majority errs
in failing to do this.

 In finding no egregious harm under the state-law Almanza standard for errors in the
written charge, the majority denies relief. Contrary to its analysis, it is of no moment to
conclude that the two special issues embraced most of Smith's mitigating evidence. The
Supreme Court held the nullification instruction was "constitutionally inadequate" to allow
that evidence to be considered under the charge Smith received. This is particularly true
since the Supreme Court indicated that most of the mitigating evidence was similar to
Penry's mitigating evidence. Smith v. Texas, 543 U.S. at 48 ("just as in Penry II,"
deliberateness and future dangerousness had little to do with the mitigating evidence Smith
presented). In other words, it is not possible that the special issues adequately channeled
Smith's mitigating evidence to the jury because the nullification instruction itself "intensified
the dilemma faced by ethical jurors," and as a consequence, choked off at the source any
ability to express a reasoned moral response to the evidence. Because there was no
principled distinction between Smith's instruction and Penry's, all of Smith's mitigating
evidence was "shackled and confined" within the scope of the special issues. See id. at 47-48. 

 Similarly, that Smith did not suffer egregious harm because of the well-presented
argument and the jury's perception of the evidence (whether aggravating, double-edged
sword, or mitigating), is beside the point because in the absence of a vehicle--a proper
mitigation question--the jury had no way to express its reasoned moral response to the
argument in mitigation and the evidence in mitigation. In other words, even if the jury was
persuaded by the "Dr. Jekyll" argument and the "Dr. Jekyll" evidence , see Maj. op. supra
at 24, the jury could not give any consideration or effect to it because it had no way to do so. 

 Lastly, the majority improperly places the burden of proof on Smith to show harm. 
See Maj. op. supra at 29 (applicant fails to provide any persuasive argument that the jury was
unable to consider the totality of his extensive mitigating evidence). As we said in Ovalle
v. State, 13 S.W.3d 774, 787 (Tex. Crim. App. 2000), no party should have the burden to
prove harm from an error, as there is no way to prove "actual harm." Burdens and
requirements of proving "actual facts" are appropriate in the law of evidence, but they have
little meaning for the harmless-error decision." 

Conclusion

 I would hold that, under the proper harmless error standard, Tex. R. App. P. 44.2(a),
we must order habeas corpus relief. Based on the quantity and quality of Smith's mitigating
evidence, to which the jury had no means to consider and give effect, I cannot say that the
Eighth Amendment error was harmless beyond a reasonable doubt. 

 I respectfully dissent. 

FILED: MARCH 1, 2006

PUBLISH
1. Penry v. Johnson, 532 U.S. 782, 798 (2001) (Penry II). 
2. Penry v. Lynaugh, 492 U.S. 302, 328 (1989) (Penry I) (remanding for new punishment
hearing without assessing harm). 
3. We recently held that the Penry II nullification problem was not recognized at the time
of a similarly situated capital defendant's trial and remanded the cause to the convicting court for
consideration of the claim. See Ex parte Robertson, AP-74,720 * 23 (Tex. Crim. App. March 16,
2005) (not designated for publication).

4. Beathard v. State, 767 S.W.2d 423, 432 (Tex. Crim. App. 1989).
5. Providing in part that "the defendant or his counsel shall have a reasonable time to
examine the [proposed charge] and he shall present his objections thereto in writing, distinctly
specifying each ground of objection. Said objections may embody errors claimed to have been
committed in the charge, as well as errors claimed to have been committed by omissions
therefrom or in failing to charge upon issues arising from the facts." 
6. The rule governing objecting to the charge provides that Smith was not required to do
what the majority suggests he should have done. "[A]nd in no event shall it be necessary for the
defendant or his counsel to present special requested charges to preserve or maintain any error
assigned to the charge, as herein provided. See Tex. Code Crim. Proc. Ann. art 36.14
(emphasis added). 
7. For example, this court has become more and more willing to apply procedural bars to
substantive complaints that were clearly preserved in the trial court, particularly where the
substantive claim had merit and the defendant, by all accounts, was an unappealing recipient of
relief. See, e.g., Keeter, 175 S.W.3d 756 (Tex. Crim. App. 2005) (holding that Keeter did not
preserve error on a Brady v. Maryland [373 U.S. 83 (1963)] claim, even though objection,
written motion, and testimony were elicited before trial court in indecency with a child case);
Reyna v. State, 168 S.W.3d 173, 176-77 (Tex. Crim. App. 2005) (applying a "less common
notion of error preservation" to indecency with a child case).
8. Because the Supreme Court has told us that Smith's mitigating evidence had little or no
relation to the other special issues, the cases cited by the majority to support the contrary have no
relevance to this proceeding. See Maj. op. at 19-21 & n.34-37.
9. Despite its recognition of the Supreme Court's conclusion that the nullification
instruction here was more confusing to the jury than the state court assumed, the majority
explains while it was "indeed a possibility" that the nullification instruction intensified the
dilemma for ethical jurors, the record does not reflect that any juror, party, or the judge so
expressed this notion on the record. Maj. op. supra at 23-24. This, however, does not mean that
confusion did not occur in the jury room where it was most likely to happen.